1  SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
       A Limited Liability Partnership
2        Including Professional Corporations
    MARTIN D. KATZ, Cal. Bar No. 110681
3  JAY T. RAMSEY, Cal. Bar No. 273160
    1901 Avenue of the Stars, Suite 1600
4  Los Angeles, California 90067-6055
    Telephone:  310.228.3700
5  Facsimile:   310.228.3701
    mkatz@sheppardmullin.com
6  jramsey@sheppardmullin.com

7  Attorneys for Defendants and Counter-Claimants
    GLOBAL EAGLE ENTERTAINMENT INC.,
8  INFLIGHT PRODUCTIONS USA INC., AND
    INFLIGHT PRODUCTIONS LTD.

9

10              UNITED STATES DISTRICT COURT

11             CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| 12  UMG RECORDINGS, INC. a Delaware corporation; CAPITOL RECORDS, LLC, a Delaware limited liability company; UNIVERSAL MUSIC CORP., a Delaware corporation; SONGS OF UNIVERSAL, INC., a California corporation; UNIVERSAL – POLYGRAM INTERNATIONAL PUBLISHING, INC., a Delaware corporation; UNIVERSAL – POLYGRAM INTERNATIONAL TUNES, INC., a Delaware corporation; UNIVERSAL MUSIC – MGB NA LLC, a California limited liability company; UNIVERSAL MUSIC – Z TUNES LLC, a New York limited liability company; and RONDOR MUSIC INTERNATIONAL, INC., a California corporation; and UNIVERSAL MUSICA, INC., a Florida Corporation, | Case No. 2:14-cv-03466-MMM (JPR) **GLOBAL EAGLE ENTERTAINMENT INC., INFLIGHT PRODUCTIONS USA INC. AND INFLIGHT PRODUCTIONS LTD.'S: (1) ANSWER TO THE FIRST AMENDED COMPLAINT; AND (2) COUNTERCLAIMS FOR RELIEF** Complaint Filed:  May 5, 2014 FAC Filed:  February 24, 2015 Discovery cutoff:  May 8, 2015 Pretrial Conf.:  August 31, 2015 Trial:  September 29, 2015 |

23              Plaintiffs,

24        v.

25  GLOBAL EAGLE
    ENTERTAINMENT INC., a Delaware
26  corporation, for itself and d/b/a
    INFLIGHT PRODUCTIONS,
27  INFLIGHT ENTERTAINMENT
    ALLIANCE and IFP; INFLIGHT
28  PRODUCTIONS USA INC. a/k/a

AAEC INC., a California corporation, for itself and d/b/a INFLIGHT PRODUCTIONS, INFLIGHT ENTERTAINMENT ALLIANCE and IFP; INFLIGHT PRODUCTIONS LTD., an entity of unknown form; AMERICAN AIRLINES, INC., a Delaware corporation; and DOES 1-20, inclusive,

Defendants.

GLOBAL EAGLE ENTERTAINMENT INC., a Delaware Company, INFLIGHT PRODUCTIONS USA INC.. a California corporation, and INFLIGHT PRODUCTIONS LTD., a United Kingdom limited company,

Counter-Claimants,

v.

UMG RECORDINGS, INC. a Delaware corporation; CAPITOL RECORDS, LLC, a Delaware limited liability company; UNIVERSAL MUSIC CORP., a Delaware corporation; SONGS OF UNIVERSAL, INC., a California corporation; UNIVERSAL – POLYGRAM INTERNATIONAL PUBLISHING, INC., a Delaware corporation; UNIVERSAL – POLYGRAM INTERNATIONAL TUNES, INC., a Delaware corporation; UNIVERSAL MUSIC – MGB NA LLC, a California limited liability company; UNIVERSAL MUSIC – Z TUNES LLC, a New York limited liability company; and RONDOR MUSIC INTERNATIONAL, INC., a California corporation; and UNIVERSAL MUSICA, INC., a Florida Corporation; Universal Music Group International Ltd., an unknown entity, and ROES 1-10, inclusive,

Counter-Defendants.

**INTRODUCTORY STATEMENT**

1.     This case – both Plaintiffs[1] First Amended Complaint ("FAC") and this Counterclaim – stems from UNIVERSAL MUSIC's utter disregard for years of communications with Defendants Inflight Productions Ltd. ("IFP UK") and Inflight Productions USA Inc. ("IFP USA") (collectively "IFP").   Ignoring their own misrepresentations and concealments, UNIVERSAL MUSIC is now attempting to use "statutory damages" under United States copyright law as a so-called Sword of Damocles to extract large sums of money from IFP UK and IFP USA and their parent, Global Eagle Entertainment Inc. ("Global Eagle") (collectively, with IFP, "Defendants," "Counter-Claimants" or "INFLIGHT"), as well as from their airline customers and other content service providers ("CSPs") who supplied musical content to airlines in connection with their inflight audio entertainment services. UNIVERSAL MUSIC has not only acted fraudulently, it has intentionally interfered with INFLIGHT's contracts with its airline customers and INFLIGHT's prospective economic advantage.   Part and parcel of this conduct has been UNIVERSAL MUSIC's attempt to steal business away from INFLIGHT and other airline CSPs to support a newly created business within UNIVERSAL MUSIC.

2.     By late 2009, IFP had contacted UNIVERSAL MUSIC's representatives and agents and described its ongoing reproduction and distribution activities in the United States.   IFP explained to UNIVERSAL MUSIC that it believed certain gaps existed in the patchwork of licenses around the world that

---

[1]     "Plaintiffs" refers to UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Songs of Universal, Inc., Universal – Polygram International Publishing, Inc., Universal – Polygram International Tunes, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes LLC, Rondor Music International, Inc., and Universal Musica, Inc.  Plaintiffs and Cross-Defendant Universal Music Group International Ltd. are collectively referred to herein as "UNIVERSAL MUSIC." UNIVERSAL MUSIC and ROES 1-10 are collectively referred to herein as "Cross-Defendants."

were needed to fully comply with copyright laws in the United States. Rather than abandon its operations in the United States, IFP sought a license from UNIVERSAL MUSIC that would close the licensing gaps and enable IFP to continue its reproduction and distribution activities in the United States. UNIVERSAL MUSIC and IFP agreed to a licensing fee and, on multiple occasions, UNIVERSAL MUSIC represented and promised that it would transmit an acceptable contract form to IFP that would cover IFP's operations in the United States, as well as IFP's airline customers.

3. In its discussions with UNIVERSAL MUSIC, IFP also stated that it was maintaining reserves while it awaited the documentation from UNIVERSAL MUSIC, from which it would pay UNIVERSAL MUSIC its *pro rata* share. That, too, was acceptable to UNIVERSAL MUSIC.

3. Despite repeated efforts by IFP – over the course of years – to complete the documentation of the agreed upon license, UNIVERSAL MUSIC failed to act in accordance with its representations and promises.

4. At no time prior to November 2013 did UNIVERSAL MUSIC in any way communicate to IFP that it objected to IFP's ongoing activities, whether in the United States or abroad, in servicing its airline customers using content owned by UNIVERSAL MUSIC. Nor did UNIVERSAL MUSIC issue a cease and desist letter at any time prior to November 2013, even though that is traditional vehicle by which UNIVERSAL MUSIC communicates to other parties its objection to the ongoing use of its copyrighted works.

5. Rather, UNIVERSAL MUSIC, through its representations, promises and concealments, led IFP to reasonably believe that it could continue servicing its airline clients, including through its activities in the United States, until the license was documented. In this same vein, UNIVERSAL MUSIC led IFP to believe that IFP and its airline customers would be covered from cradle to grave until the license

1  was documented, and thereafter except as may be restricted by the anticipated
2  license agreement.

3      6.      In November 2013, UNIVERSAL MUSIC changed its tune.   After
4  another lawsuit had been filed against IFP UK, another airline CSP and a major
5  domestic airline by one of UNIVERSAL MUSIC's competitors, UNIVERSAL
6  MUSIC decided to follow suit.  In doing so, UNIVERSAL MUSIC acted contrary to
7  years of representations and promises to IFP.   UNIVERSAL MUSIC motivations
8  were twofold.   First, in the wake of a substantial decline in the music business,
9  UNIVERSAL MUSIC has attempted to extract payments in the form of settlements
10 and damages from IFP and its airline clients (as well as from other airline CSPs and
11 their airline clients).  Second, UNIVERSAL MUSIC has attempted to create its own
12 business of supplying content directly to airlines, thereby cutting CSPs like IFP out
13 of the equation.

14     7.      UNIVERSAL MUSIC's conduct is shameful and illegal.  INFLIGHT's
15 Answer and Counterclaim outlines the appropriate remedies for UNIVERSAL
16 MUSIC's abhorrent behavior.

17

18                          **ANSWER**
19     Defendants hereby answer Plaintiffs' FAC as follows:
20                    **NATURE OF THE ACTION**
21     1.      Defendants deny the allegations in this Paragraph.
22     2.      Defendants deny the allegations in this Paragraph.
23     3.      Defendants deny the allegations in this Paragraph.
24     4.      The allegations in Paragraph 4 are not directed to Defendants and,
25 accordingly, no response is required.   To the extent that a response is required,
26 Defendants deny the allegations in this Paragraph.
27     5.      Defendants deny the allegations in this Paragraph.
28     6.      Defendants deny the allegations in this Paragraph.

-3-

**<u>JURISDICTION AND VENUE</u>**

7.     The allegations in this Paragraph are legal conclusions for which no response is required.

8.     Defendants admit that the Court has jurisdiction over this action.

9.     Defendants admit that the Court can exercise personal jurisdiction over Defendants in this action.   Except as expressly admitted, Defendants deny the allegations in this Paragraph.

10.     Defendants admit that venue is proper in this District in this action. Except as expressly admitted, Defendants deny the allegations in this Paragraph.

**<u>THE PARTIES</u>**

**<u>The Record Company Plaintiffs</u>**

11.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

12.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

13.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

14.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

**<u>The Music Publisher Plaintiffs</u>**

15.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

16.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

17.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

18.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

19.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

20.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

21.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

22.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

23.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

24.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

25.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

**Defendants**

26.     Defendants admit that Global Eagle Entertainment Inc. is a Delaware corporation with its principal place of business in Marina del Rey, California. Except as expressly admitted, Defendants deny the allegations in this Paragraph.

27.     Defendants admit that Inflight Productions USA Inc. is a California corporation with its principal place of business in Marina del Rey, California. Except as expressly admitted, Defendants deny the allegations in this Paragraph.

28.     Defendants admit that Inflight Productions Ltd. is a United Kingdom limited company with its principal place of business in London, England.  Except as expressly admitted, Defendants deny the allegations in this Paragraph.

29.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

30.     Defendants deny the allegations in this Paragraph.

## FACTS COMMON TO ALL CLAIMS

31.     Defendants deny the allegations in this Paragraph.

32.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

33.     Defendants deny the allegations in this Paragraph.

34.     Defendants deny the allegations in this Paragraph.

35.     Defendants deny the allegations in this Paragraph.

## COUNT I

## COPYRIGHT INFRINGEMENT – SOUND RECORDINGS

### By the Record Company Plaintiffs Against All Defendants

36.     Defendants incorporate by reference their responses to Paragraphs 1 through 35, as set forth above.

37.     Defendants lack sufficient information to either admit or deny the allegation in this Paragraph that the Record Company Plaintiffs own the copyrights in the sound recordings identified in Exhibit B to the FAC, and on that basis, deny the same.  Defendants deny the remaining allegations of this Paragraph.

38.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

39.     Defendants deny the allegations in this Paragraph.

40.     Defendants deny the allegations in this Paragraph.

41.     Defendants deny the allegations in this Paragraph.

42.     Defendants deny the allegations in this Paragraph.

43.     Defendants deny the allegations in this Paragraph.

## COUNT II

## COPYRIGHT INFRINGEMENT – MUSICAL COMPOSITIONS

### By the Music Publisher Plaintiffs Against All Defendants

44.     Defendants incorporate by reference their responses to Paragraphs 1 through 35, as set forth above.

45.     Defendants lack sufficient information to either admit or deny the allegation in this Paragraph that the Music Publisher Plaintiffs own the copyrights in the musical compositions identified in Exhibit C to the FAC, and on that basis, deny the same.  Defendants deny the remaining allegations of this Paragraph.

46.     Defendants lack sufficient information to either admit or deny the allegations in this Paragraph, and on that basis, deny the same.

47.     Defendants deny the allegations in this Paragraph.

48.     Defendants deny the allegations in this Paragraph.

49.     Defendants deny the allegations in this Paragraph.

50.     Defendants deny the allegations in this Paragraph.

51.     Defendants deny the allegations in this Paragraph.

## COUNT III

## VIOLATION OF CALIFORNIA CIVIL CODE § 980(2)

### By the Record Company Plaintiffs Against All Defendants

52.     Defendants incorporate by reference their responses to Paragraphs 1 through 35, as set forth above.

53.     Defendants lack sufficient information to either admit or deny the allegation in this Paragraph that the Record Company Plaintiffs possess exclusive ownership interest in and to thousands of sound recordings pursuant to California Civil Code § 980(a)(2), including those identified in Exhibit D to the FAC, and on that basis, deny the same.   Defendants deny the remaining allegations of this Paragraph.

54.     Defendants deny the allegations in this Paragraph.

55.     Defendants deny the allegations in this Paragraph.

56.     Defendants deny the allegations in this Paragraph.

<b><u>COUNT IV</u></b>

<b><u>VIOLATION OF CALIFORNIA BUSINESS AND PROFESSIONS</u></b>

<b><u>CODE § 17200 AND COMMON LAW UNFAIR COMPETITION</u></b>

<b>By the Record Company Plaintiffs Against All Defendants</b>

57.   Defendants incorporate by reference their responses to Paragraphs 1 through 35 and 53 through 56, as set forth above.

58.   Defendants deny the allegations in this Paragraph.

59.   Defendants deny the allegations in this Paragraph.

60.   Defendants deny the allegations in this Paragraph.

61.   Defendants deny the allegations in this Paragraph.

62.   Defendants deny the allegations in this Paragraph.

Defendants further deny that Plaintiffs are entitled to any of the relief prayed for in the WHEREFORE clause in the FAC.

<b><u>AFFIRMATIVE DEFENSES</u></b>

<b><u>FIRST AFFIRMATIVE DEFENSE</u></b>

1.   The FAC fails to state a claim upon which relief may be granted.

<b><u>SECOND AFFIRMATIVE DEFENSE</u></b>

2.   Plaintiffs' claims are barred, in whole or in part, by the applicable statutes of limitations, including but not limited to 17 U.S.C. § 507(b), California Code of Civil Procedure §§ 338, 343, and California Business & Professions Code § 17208.

<b><u>THIRD AFFIRMATIVE DEFENSE</u></b>

3.   Plaintiffs' claims are barred, in whole or in part, because Defendants were licensed or otherwise authorized to use Plaintiffs' works.

<b><u>FOURTH AFFIRMATIVE DEFENSE</u></b>

4.   Plaintiffs' claims are barred, in whole or in part, by the doctrine of estoppel.

1

## FIFTH AFFIRMATIVE DEFENSE

2       5.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of

3 waiver.

4

## SIXTH AFFIRMATIVE DEFENSE

5       6.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of

6 consent.

7

## SEVENTH AFFIRMATIVE DEFENSE

8       7.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of

9 implied license.

10

## EIGHTH AFFIRMATIVE DEFENSE

11       8.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of

12 unclean hands.

13

## NINTH AFFIRMATIVE DEFENSE

14       9.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of

15 laches.

16

## TENTH AFFIRMATIVE DEFENSE

17       10.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of

18 abandonment.

19

## ELEVENTH AFFIRMATIVE DEFENSE

20       11.     Plaintiffs' state law claims are preempted in whole or in part by the

21 Airline Deregulation Act, 49 U.S.C. § 41713.

22

23       **WHEREFORE**, Defendants seek judgment against Plaintiffs:

24       (a)     Denying all relief sought by Plaintiffs and dismissing the FAC in its

25 entirety, with prejudice;

26       (b)     Awarding Defendants their attorneys' fees and costs incurred herein to

27 the maximum extent allowed by law; and

28

(c)     Granting Defendants such other and further relief as this Court deems just and proper.

## COUNTERCLAIMS

Defendants and Counter-Claimants, by their undersigned attorneys, for their Counterclaims against Plaintiffs and Counter-Defendants, allege as follows:

### PARTIES

#### Counter-Claimants

1.     Counter-Claimant IFP UK is a United Kingdom limited company with its principal place of business in London, England.

2.     Counter-Claimant IFP USA is a California corporation with its principal place of business in Marina del Rey, California.

3.     Counter-Claimant Global Eagle is a Delaware corporation with its principal place of business in Marina del Rey, California.  Global Eagle is the direct or indirect parent of IFP UK and IFP USA.

4.     IFP UK and IFP USA are referred to collectively as IFP.  IFP and Global Eagle are referred to collectively as Counter-Claimants.

#### Counter-Defendants

5.     Based on information and belief, Counter-Defendant UMG Recordings, Inc. is a Delaware corporation with its principal place of business in Los Angeles County, California.  Based on information and belief, UMG Recordings, Inc. owns or controls the rights to certain sound recordings.

6.     Based on information and belief, Counter-Defendant Capitol Records, LLC is a Delaware limited liability company with its principal place of business in Los Angeles County, California.  Based on information and belief, Capitol Records, LLC owns or controls the rights to certain sound recordings.

7.     Based on information and belief, Counter-Defendant Universal Music Corp. is a Delaware corporation with its principal place of business in Los Angeles

County, California.  Based on information and belief, Universal Music Corp. owns or controls the rights to certain musical compositions.

8. Based on information and belief, Counter-Defendant Songs of Universal, Inc. is a California corporation with its principal place of business in Los Angeles County, California.  Based on information and belief, Songs of Universal, Inc. owns or controls the rights to certain musical compositions.

9. Based on information and belief, Counter-Defendant Universal – Polygram International Publishing, Inc. is a Delaware corporation with its principal place of business in Los Angeles County, California.  Based on information and belief, Universal – Polygram International Publishing, Inc. owns or controls the rights to certain musical compositions.

10. Based on information and belief, Counter-Defendant Universal – Polygram International Tunes, Inc. is a Delaware corporation with its principal place of business in Los Angeles County, California.  Based on information and belief, Universal – Polygram International Tunes, Inc. owns or controls the rights to certain musical compositions.

11. Based on information and belief, Counter-Defendant Universal Music – MGB NA LLC is a Delaware limited liability company with its principal place of business in Los Angeles County, California.  Based on information and belief, Universal Music – MGB NA LLC owns or controls the rights to certain musical compositions.

12. Based on information and belief, Counter-Defendant Universal Music – Z Tunes LLC is a New York limited liability company with its principal place of business in Los Angeles County, California.  Based on information and belief, Universal Music – Z Tunes LLC owns or controls the rights to certain musical compositions.

13. Based on information and belief, Counter-Defendant Rondor Music International, Inc. is a Californian corporation with its principal place of business in

Los Angeles County, California.  Based on information and belief, Rondor Music International, Inc. owns or controls the rights to certain musical compositions.

14.     Based on information and belief, Counter-Defendant Universal Musica, Inc. is a Florida corporation with its principal place of business in Los Angeles County, California.  Based on information and belief, Universal Musica, Inc. owns or controls the rights to certain musical compositions.

15.     Based on information and belief, Counter-Defendant Universal Music Group International Ltd. is an company organized under the laws of the United Kingdom with its principal place of business in London, England.

16.     UMG Recordings, Inc., Capitol Records, LLC, Universal Music Corp., Songs of Universal, Inc., Universal – Polygram International Publishing, Inc., Universal – Polygram International Tunes, Inc., Universal Music – MGB NA LLC, Universal Music – Z Tunes LLC, Rondor Music International, Inc., Universal Musica, Inc. and Universal Music Group International Ltd. are referred to collectively as UNIVERSAL MUSIC.

17.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Counter-Defendants sued herein as ROES 1 through 10 are unknown to Counter-Claimants, who therefore sue such Counter-Defendants by such fictitious names.  The true names and capacities of ROES 1 through 10 have been concealed from Counter-Defendants by UNIVERSAL MUSIC by, among other things, evasive and incomplete discovery responses.  If necessary, Counter-Claimants will seek leave of Court to amend these Counter-Claims to state their true names and capacities when the same have been ascertained.

18.     Counter-Claimants are informed and believe, and on that basis aver, that ROES 1 through 5 are affiliates, agents or representatives of UNIVERSAL MUSIC that conspired with or aided and abetted UNIVERSAL MUSIC or otherwise acted in furtherance of the misrepresentations and concealments for which Cross-Claimants seek relief in their first, second and third claims for relief.

19.     Counter-Claimants are informed and believe, and on that basis aver, that ROES 6 through 10 are affiliates, agents or representatives of UNIVERSAL MUSIC that conspired with or aided and abetted UNIVERSAL MUSIC or otherwise acted in furtherance of the wrongful interference with Counter-Claimants' contractual relations and prospective business advantage for which Cross-Claimants seek relief in their fourth, fifth and sixth claims for relief.

## JURISDICTION AND VENUE

20.     The compulsory counterclaims set forth in these Counterclaims arise from the same case or controversy as the original claims over which UNIVERSAL MUSIC asserts that the Court has original jurisdiction and, therefore, fall within the supplemental jurisdiction of the Court pursuant to 28 U.S.C. § 1367(a).  Further, personal jurisdiction is appropriate over Universal Music Group International Ltd. because, as set forth below, it conspired with or aided and abetted UNIVERSAL MUSIC in furtherance of UNIVERSAL MUSIC's tortious acts in California.

21.     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the Counterclaims occurred in this district.

## GENERAL ALLEGATIONS

### Inflight Entertainment

22.     Airlines provide their passengers with a host of inflight entertainment options, ranging from crosswords and puzzles in the seatback magazine to music, movies and television to video games and Wi-Fi internet.

23.     As for music, airlines have been providing their passengers with a range of inflight audio entertainment options for decades.  For many years, passengers could plug headphones into their armrest and choose from approximately ten or more "radio" channels playing a variety of different musical genres.  These "radio" stations, sometimes referred to as "Broadcast Programs," would typically run one or two hours in length and would loop continuously throughout the flight.

These Broadcast Programs would sometimes include voiceovers introducing the songs, much like a radio disc jockey, or interviews with artists featured during the program.  Since at least 2007, certain airlines have provided passengers with a catalog of musical albums or songs from which passengers choose the albums or songs they want to hear.  This is referred to as audio on-demand or "AOD" programming.

24.    Airlines contract with CSPs (content service providers) to help provide these inflight audio entertainment services.  The CSPs typically produce and supply airlines or their vendors with content to install onto aircraft so that the airlines can offer inflight audio entertainment services, including Broadcast Programs and AOD playlists, to their passengers.

### IFP's Business

25.    Over the course of many years, IFP has served as a CSP, including for inflight audio entertainment, for a number of domestic and international airlines.

26.    IFP's operations were historically run out of the United Kingdom through IFP UK.  For many years, IFP has had licenses in place in the United Kingdom with rights and collection societies known as Phonographic Performance Limited (the "PPL") and Mechanical-Copyright Protection Society Limited ("MCPS").  UNIVERSAL MUSIC, directly or through its foreign affiliates, has been a member of PPL and MCPS.

27.    Through the end of 2014, IFP's licenses with the PPL and MCPS permitted IFP to reproduce and distribute sound recordings and musical compositions in the United Kingdom for use on aircraft worldwide.

28.    IFP has also had licenses with other similar foreign rights and collection societies permitting IFP to reproduce and distribute sound recordings and musical compositions in those foreign territories for use on aircraft worldwide.

29.    For many years, IFP has maintained a location in the United States. IFP's location in the United States has, among other things, provided support for

1  IFP's services as a CSP for airlines in connection with their inflight audio

2  entertainment services.

**UNIVERSAL MUSIC Has Known For Years That Airlines And Their CSPs**

**Have Been Using Their Works In The United States**

**Without All Of The Necessary Licenses In Place**

6  30.  For many years, UNIVERSAL MUSIC has known that airlines provide

7  inflight audio entertainment services to their passengers.  UNIVERSAL MUSIC has

8  also known for years that its sound recordings and musical compositions were

9  reproduced and distributed in the United States by certain airline CSPs without all of

10  the necessary licenses in place to fully comply with United States copyright laws or

11  any applicable state law.  UNIVERSAL MUSIC has also known for years that

12  airlines have publicly performed its sound recordings without public performance

13  licenses in place.  Nevertheless, UNIVERSAL MUSIC did not object and, indeed,

14  encouraged airlines and their CSPs to use its sound recordings and musical

15  compositions, as it viewed inflight audio entertainment services as affording

16  promotional value, while also generating revenue through public performance

17  licenses in its musical compositions, which were granted by domestic rights and

18  collection societies such as American Society of Composers, Authors and Publishers

19  ("ASCAP"), Broadcast Music, Inc. ("BMI") and Society of European Stage Authors

20  and Composers ("SESAC").

21  31.  For example, for years, UNIVERSAL MUSIC or others with actual or

22  apparent authority to act on behalf of UNIVERSAL MUSIC, sent CSPs, including

23  IFP, copies of sound recordings owned by UNIVERSAL MUSIC.  UNIVERSAL

24  MUSIC knew, expected and, indeed, hoped that these sound recordings (or at least

25  some of them) would be used by CSPs and their airline customers in connection

26  with inflight audio entertainment services provided by airlines to their passengers,

27  who were essentially a captive audience for hours at a time.  Because the

28  promotional value to UNIVERSAL MUSIC was considered to be greater than the

-15-

license value, in some cases, when CSPs or their airline customers demanded it, UNIVERSAL MUSIC even paid CSPs or their airline customers to use its sound recordings in connection with inflight audio entertainment services.   Typically, unless UNIVERSAL MUSIC was paying CSPs or their airline customers to use its sound recordings, UNIVERSAL MUSIC or others with actual or apparent authority to act on behalf of UNIVERSAL MUSIC authorized such use with little or no documentation and without all of the necessary licenses in place to fully comply with United States copyright laws or any applicable state law.

32.   Executives at UNIVERSAL MUSIC also flew on airlines in the United States and around the world and knew or should have known that UNIVERSAL MUSIC's sound recordings and musical compositions were being reproduced, distributed and publicly performed without all of the necessary licenses in place to fully comply with United States copyright laws or any applicable state law.

33.   Prior to 2009, UNIVERSAL MUSIC did enter into a license agreement with one airline CSP.   Various executives at UNIVERSAL MUSIC knew which airlines the licensed-CSP serviced, that the licensed-CSP did not have a monopoly on airline customers and, accordingly, that there were other CSPs (and their airline customers) using UNIVERSAL MUSIC's sound recordings and musical compositions without all of the necessary licenses in place to fully comply with United States copyright laws or any applicable state law.

34.   In early 2009, UNIVERSAL MUSIC also became aware that UNIVERSAL MUSIC's sound recordings and musical compositions were being used on a major domestic airline that was serviced by IFP.   At that time, UNIVERSAL MUSIC believed that neither IFP nor the airline had all of the necessary licenses in place to fully comply with United States copyright laws or any applicable state law.

35.   Also in early 2009, and during a several year period thereafter, UNIVERSAL MUSIC learned from one or more auditors representing artists (*i.e.,*

auditors who were auditing UNIVERSAL MUSIC on behalf of their artist clients), one or more managers representing artists, and one or more airlines that UNIVERSAL MUSIC's sound recordings and musical compositions were being used by various CSPs and airlines without all of the necessary licenses in place to fully comply with United States copyright laws or any applicable state law.

36.   Despite learning that nearly an entire industry was reproducing, distributing and publicly performing its sound recordings and musical compositions without all of the necessary licenses in place to fully comply with United States copyright laws or any applicable state law, UNIVERSAL MUSIC took no action before mid-to-late 2013 to either stop the use of its sound recordings and musical compositions on aircraft or demand payment for it.

37.   Nor did UNIVERSAL MUSIC do anything to ensure that its artists were being paid for the use of its sound recordings and musical compositions. Indeed, based on information and belief, even when UNIVERSAL MUSIC received payments from its licensed-CSPs or others, it failed to pay its artists their share of those monies and instead kept it all for itself.

38.   UNIVERSAL MUSIC took no action against any airline CSP or airline prior to mid-to-late 2013 for many good reasons:  UNIVERSAL MUSIC knew it or its affiliated entities were receiving revenues from certain licensed uses of their works by airline CSPs and their airline customers; UNIVERSAL MUSIC knew it was also receiving promotional value from the performance of its works to captive audiences onboard aircraft; UNIVERSAL MUSIC believed that the transactional costs of closing the licensing gaps were greater than the additional revenues that would be generated from doing so; UNIVERSAL MUSIC was bogged down with other more troubling areas of its business; and, of course, UNIVERSAL MUSIC did not want to kill the existing market that was generating both revenues and promotional value for UNIVERSAL MUSIC and its affiliates.

**IFP Approaches UNIVERSAL MUSIC, Is Assured That The Continued Use Of Its Sound Recordings And Musical Compositions Was Acceptable And Relies On UNIVERSAL MUSIC's Representations, Promises And Other Conduct**

39.    In 2008, IFP engaged Rightscom Ltd. ("Rightscom"), a rights consultant in the United Kingdom, to determine if IFP had the correct licenses in place around the world for its various activities, including its operations in the United States.  IFP later tasked Rightscom with responsibility for closing certain licensing gaps that it identified in the patchwork of licenses existing around the world, including in the United States.

40.    To that end, by late October 2009, Rightscom (acting on behalf of IFP) contacted UNIVERSAL MUSIC directly as well as its representative for musical compositions, Harry Fox Agency ("HFA").  Rightscom identified for UNIVERSAL MUSIC (and HFA) activities for which there was or could be a licensing gap and proceeded to negotiate the terms of a license with UNIVERSAL MUSIC. UNIVERSAL MUSIC agreed to terms with IFP and represented and promised that it would transmit a contract to IFP to document the agreement.  HFA separately represented and promised that it would transmit a contract to IFP to cover musical compositions.

41.    During this time frame, UNIVERSAL MUSIC assured IFP that its continued reproduction and distribution of UNIVERSAL MUSIC's works in the United States for use on airlines was acceptable.  At no time did UNIVERSAL MUSIC communicate to IFP that its continued reproduction and distribution of UNIVERSAL MUSIC's works in the United States for use on airlines was unacceptable.  Nor did UNIVERSAL MUSIC issue a cease and desist letter, which is a commonly used vehicle – by UNIVERSAL MUSIC, the music industry and many other rights owners – for communicating to a party that its conduct is unacceptable.

42.     In its discussions with UNIVERSAL MUSIC, IFP also stated that it was maintaining reserves while it awaited the documentation from UNIVERSAL MUSIC, from which it would pay UNIVERSAL MUSIC its *pro rata* share.  That was acceptable to UNIVERSAL MUSIC.

43.     Based UNIVERSAL MUSIC's representations, promises and other conduct, IFP continued to reproduce and distribute UNIVERSAL MUSIC's works in the United States.  IFP's reliance on UNIVERSAL MUSIC's representations and conduct, which was entirely reasonable, included servicing existing airline customers and securing new airline customers.

### UNIVERSAL MUSIC Changes Its Tune In Late 2013

44.     On October 22, 2013, one of UNIVERSAL MUSIC's competitors filed suit against IFP UK, a major domestic airline and one of its other CSPs.  UNIVERSAL MUSIC became aware of the lawsuit and decided to follow suit in total disregard for years of representations, promises and other conduct to the contrary.

45.     On October 31, 2013, in-house litigation counsel at UNIVERSAL MUSIC contacted Rightscom, purporting to respond to an email from two years earlier (from September 2011), but asking to speak to a representative of IFP to discuss the lawsuit filed by its competitor.

46.     Shortly thereafter, in a November 20, 2013 email, UNIVERSAL MUSIC sent its first and only cease and desist communication to IFP, which UNIVERSAL MUSIC knew was in bad faith and contrary to its earlier representations, promises and other conduct.

### UNIVERSAL MUSIC Attempts To Wrongfully Disrupt IFP's Contractual Relationships With Its Airline Customers
### And Its Prospective Business Relationships

47.     UNIVERSAL MUSIC's wrongful cease and desist letter itself interfered with IFP's contractual relationships with its airline customers and

-19-

prospective business relationships.  In addition, UNIVERSAL MUSIC has communicated directly with numerous domestic and international airlines, including a number of IFP's airline customers, seeking to negotiate agreements directly with IFP's customers and potential customers, so as to further interfere with IFP's contractual relationships and prospective business relationships by stealing IFP's customers.

## Damages

48.    As a result of UNIVERSAL MUSIC's actions, IFP has suffered massive damages.

49.    For example, IFP was forced to cease its audio reproduction and distribution activities in the United States and move all such operations abroad where it had reproduction and distribution licenses in place.  In addition to the costs and expenses associated with that move, UNIVERSAL MUSIC's actions have caused IFP to lose certain business for which it had contracts in place and other business which it had a substantial likelihood of procuring.

50.    IFP has also incurred and may in the future incur substantial legal fees responding to UNIVERSAL MUSIC's threats of or actual litigation against IFP's airline customers.  Moreover, should any of IFP's airline customers incur any liability to UNIVERSAL MUSIC to settle UNIVERSAL MUSIC's threats of or actual litigation against them, IFP may be required to indemnify one or more of its airline customers for said costs or otherwise compensate its customers.

51.    The amount of damage suffered by Counter-Claimants will be proven at the time of trial, but Counter-Claimants estimate that their damages will total many millions of dollars.

# CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

**(Intentional Misrepresentation Against UNIVERSAL MUSIC And ROES 1-5)**

52.  IFP expressly incorporates the allegations set forth above in Paragraphs 1 to 51.

53.  On numerous occasions, UNIVERSAL MUSIC represented to and promised IFP that IFP's continued reproduction and distribution of UNIVERSAL MUSIC's works in the United States for use on airlines was acceptable and that a contract would follow to document the agreement between the parties, including as follows:  (i) by William Waddell to Mark Ishwerwood at a meeting on October 23, 2009; (ii) by William Waddell to Mark Ishwerwood at a meeting on May 7, 2010; (iii) by Lisa Rogell to Mark Isherwood at a meeting on May 10, 2011; (iv) by Kevin Carson in emails to Mark Ishwerwood between October 2009 and May 2010 and in a meeting with Mark Isherwood on May 5, 2010; (v) by Jarett McGehee at a meeting with Mark Isherwood on May 3, 2011, during a phone call with Mark Ishwerwood on October 4, 2011, and in emails to Mark Isherwood between September 2011 and October 2011; (vi) by David Schneider in emails to Mark Isherwood in October 2010; and (vii) by Christopher Curley, on a phone call with Mark Isherwood in December 2008, at a meeting with Mark Isherwood in May 2010, in emails to Mark Isherwood between November 2008 and October 2011, and in emails to Jeff Borgeson in April 2009.

54.  UNIVERSAL MUSIC's representations and promises were false when they were made.

55.  UNIVERSAL MUSIC either knew its representations and promises were false when they were made or it made them in reckless disregard for the truth.

56.  UNIVERSAL MUSIC intended that IFP rely on its misrepresentations and false promises.

57.     IFP reasonably relied on UNIVERSAL MUSIC's misrepresentations and false promises by, among other things, continuing its reproduction and distribution activities in the United States for both existing and new airline customers.

58.     As a direct and proximate result of UNIVERSAL MUSIC's misrepresentations and false promises and IFP's reasonable reliance thereon, Counter-Claimants have been damaged as alleged in Paragraphs 48-51. The precise amount of such damages will be proven at the time of trial.

59.     UNIVERSAL MUSIC's conduct, as alleged herein, was done intentionally, willfully, maliciously, unconscionably and with wanton disregard for the rights of Counter-Claimants, and was engaged in for the purpose of benefiting UNIVERSAL MUSIC and injuring Counter-Claimants, which has subjected Counter-Claimants to cruel and unjust hardship, and was performed with such malice so as to justify an award of exemplary or punitive damages in an amount according to proof at trial.

60.     Universal Music Group International Ltd. and ROES 1 through 5 conspired with or aided and abetted UNIVERSAL MUSIC or otherwise acted in furtherance of the wrongs alleged above and, therefore, are also responsible for the damages described above.

## SECOND CLAIM FOR RELIEF

### (Concealment Against UNIVERSAL MUSIC And ROES 1-5)

61.     IFP expressly incorporates the allegations set forth above in Paragraphs 1 to 60.

62.     In its communications with IFP, UNIVERSAL MUSIC represented that IFP's continued reproduction and distribution of UNIVERSAL MUSIC's works in the United States for use on airlines was acceptable, but UNIVERSAL MUSIC intentionally failed to disclose that is secretly intended to maintain the right – at a day of its choosing and without advance notice to IFP – to seek to impose liability,

including statutory damages, on IFP and its airline customers (*i.e.*, in an amount in excess of the license fee that UNIVERSAL MUSIC agreed to accept from IFP for its activities in the United States for which IFP had been maintaining reserves).

63.　IFP was not aware that UNIVERSAL MUSIC secretly intended to maintain the right to impose liability, including statutory damages, on IFP and its airline customers for the very conduct that UNIVERSAL MUSIC led IFP to believe was acceptable.

64.　UNIVERSAL MUSIC intended to deceive IFP by concealing its true intentions as alleged above.

65.　IFP reasonably relied on UNIVERSAL MUSIC's concealment by, among other things, continuing its reproduction and distribution activities in the United States for both existing and new airline customers.

66.　As a direct and proximate result of UNIVERSAL MUSIC's concealment and IFP's reasonable reliance thereon, Counter-Claimants have been damaged as alleged in Paragraphs 48-51.  The precise amount of such damages will be proven at the time of trial.

67.　UNIVERSAL MUSIC's conduct, as alleged herein, was done intentionally, willfully, maliciously, unconscionably and with wanton disregard for the rights of Counter-Claimants, and was engaged in for the purpose of benefitting UNIVERSAL MUSIC and injuring Counter-Claimants, which has subjected Counter-Claimants to cruel and unjust hardship, and was performed with such malice so as to justify an award of exemplary or punitive damages in an amount according to proof at trial.

68.　Universal Music Group International Ltd. and ROES 1 through 5 conspired with or aided and abetted UNIVERSAL MUSIC or otherwise acted in furtherance of the wrongs alleged above and, therefore, are also responsible for the damages described above.

## THIRD CLAIM FOR RELIEF

### (Negligent Misrepresentation Against UNIVERSAL MUSIC And ROES 1-5)

69.    IFP expressly incorporates the allegations set forth above in Paragraphs 1 to 68.

70.    To the extent that UNIVERSAL MUSIC's representations, as alleged in this Counterclaim, and specifically above in Paragraphs 53 and 62, were not made intentionally to deceive IFP, then UNIVERSAL MUSIC had no reasonable grounds for believing that its representations were true when made.

71.    UNIVERSAL MUSIC intended that IFP rely on its misrepresentations.

72.    IFP reasonably relied on UNIVERSAL MUSIC's misrepresentations by, among other things, continuing its reproduction and distribution activities in the United States for both existing and new airline customers.

73.    As a direct and proximate result of UNIVERSAL MUSIC's misrepresentations and IFP's reasonable reliance thereon, Counter-Claimants have been damaged as alleged in Paragraphs 48-51.  The precise amount of such damages will be proven at the time of trial.

74.    Universal Music Group International Ltd. and ROES 1 through 5 conspired with or aided and abetted UNIVERSAL MUSIC or otherwise acted in furtherance of the wrongs alleged above and, therefore, are also responsible for the damages described above.

## FOURTH CLAIM FOR RELIEF

### (Intentional Interference With Contractual Relations Against UNIVERSAL MUSIC And ROES 6-10)

75.    IFP expressly incorporates the allegations set forth above in Paragraphs 1 to 74.

76.    IFP has entered into contracts with its airline customers to provide inflight audio entertainment services (the "Airline Contracts").

77.     By no later than 2009, UNIVERSAL MUSIC became aware that IFP had entered into Airline Contracts and was continuing to enter into Airline Contracts.

78.     When UNIVERSAL MUSIC sent its November 20, 2013 cease and desist communication to IFP, UNIVERSAL MUSIC knew that its communication was made in bad faith and contrary to its earlier representations, promises and other conduct and that its communication would disrupt IFP's performance of the Airline Contracts.

79.     When UNIVERSAL MUSIC then communicated with IFP's airline customers seeking to negotiate an agreement directly with those airlines, UNIVERSAL MUSIC knew that its conduct would disrupt IFP's performance of the Airline Contracts.

80.     UNIVERSAL MUSIC's conduct, as described above, has either prevented IFP's performance of the Airline Contracts or made IFP's performance of the Airline Contracts more expensive and difficult.

81.     As a direct and proximate result of UNIVERSAL MUSIC's conduct, Counter-Claimants have been damaged as alleged in Paragraphs 48-51.  The precise amount of such damages will be proven at the time of trial.

82.     UNIVERSAL MUSIC's conduct, as alleged herein, was done intentionally, willfully, maliciously, unconscionably and with wanton disregard for the rights of Counter-Claimants, and was engaged in for the purpose of benefitting UNIVERSAL MUSIC and injuring Counter-Claimants, which has subjected Counter-Claimants to cruel and unjust hardship, and was performed with such malice so as to justify an award of exemplary or punitive damages in an amount according to proof at trial.

83.     Universal Music Group International Ltd. and ROES 6 through 10 conspired with or aided and abetted UNIVERSAL MUSIC or otherwise acted in

furtherance of the wrongs alleged above and, therefore, are also responsible for the damages described above.

## FIFTH CLAIM FOR RELIEF

### (Intentional Interference With Prospective Business Advantage Against UNIVERSAL MUSIC And ROES 6-10)

84.     IFP expressly incorporates the allegations set forth above in Paragraphs 1 to 83.

85.     In the absence of UNIVERSAL MUSIC's conduct as alleged above, there was a substantial likelihood that IFP would have enjoyed benefits from both its continued economic relationships with existing airline customers and new economic relationships with other airlines.

86.     UNIVERSAL MUSIC was aware of IFP's economic relationships with airlines.

87.     UNIVERSAL MUSIC intended to disrupt IFP's economic relationships with airlines.

88.     To that end, UNIVERSAL MUSIC engaged in wrongful conduct by, among other things, making misrepresentations and false promises to IFP, concealing its true intentions from IFP, issuing a cease and desist communication in bad faith, communicating with IFP's airline customers in an attempt to steal IFP's customer relationships and defaming IFP in the marketplace.

89.     UNIVERSAL MUSIC's conduct, as described above, has disrupted and will in the future disrupt IFP's economic relationships with airlines.

90.     As a direct and proximate result of UNIVERSAL MUSIC's conduct, Counter-Claimants have been damaged as alleged in Paragraphs 48-51.  The precise amount of such damages will be proven at the time of trial.

91.     UNIVERSAL MUSIC's conduct, as alleged herein, was done intentionally, willfully, maliciously, unconscionably and with wanton disregard for the rights of Counter-Claimants, and was engaged in for the purpose of benefitting

UNIVERSAL MUSIC and injuring Counter-Claimants, which has subjected Counter-Claimants to cruel and unjust hardship, and was performed with such malice so as to justify an award of exemplary or punitive damages in an amount according to proof at trial.

92.    Universal Music Group International Ltd. and ROES 6 through 10 conspired with or aided and abetted UNIVERSAL MUSIC or otherwise acted in furtherance of the wrongs alleged above and, therefore, are also responsible for the damages described above.

## SIXTH CLAIM FOR RELIEF

### (Negligent Interference With Prospective Business Advantage Against UNIVERSAL MUSIC And ROES 6-10)

93.    IFP expressly incorporates the allegations set forth above in Paragraphs 1 to 92.

94.    To the extent that UNIVERSAL MUSIC's conduct as alleged in this Counterclaim, and specifically above in Paragraphs 85 through 88 above was not done to intentionally disrupt IFP's economic relationships with airlines, UNIVERSAL MUSIC knew or should have known that its conduct would disrupt IFP's economic relationships with airlines.

95.    UNIVERSAL MUSIC's conduct, as described above, has disrupted and will in the future disrupt IFP's economic relationships with airlines.

96.    As a direct and proximate result of UNIVERSAL MUSIC's conduct, Counter-Claimants have been damaged as alleged in Paragraphs 48-51.  The precise amount of such damages will be proven at the time of trial.

97.    Universal Music Group International Ltd. and ROES 6 through 10 conspired with or aided and abetted UNIVERSAL MUSIC or otherwise acted in furtherance of the wrongs alleged above and, therefore, are also responsible for the damages described above.

1    **WHEREFORE**, Counter-Claimants pray for judgment against Counter-
2  Defendants, jointly and severally, as follows:

3    (a)    For compensatory damages according to proof at trial;

4    (b)    For exemplary or punitive damages according to proof at trial;

5    (c)    For the costs incurred in this lawsuit;

6    (d)    For attorneys' fees as allowable by law;

7    (e)    For such other and further relief as this Court deems just and proper.

8

9  Dated:  March 10, 2015          SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

10

11                               By    _____
                                            */s/ Martin D. Katz*
12                                        MARTIN D. KATZ
                                          JAY T. RAMSEY
13

14                               Attorneys for Defendants and Counter-claimants
                                 GLOBAL EAGLE ENTERTAINMENT INC.;
15                               INFLIGHT PRODUCTIONS USA INC.; and
                                 INFLIGHT PRODUCTIONS LTD.
16

17

18

19

20

21

22

23

24

25

26

27

28