1

2

3

4

5

6                            UNITED STATES DISTRICT COURT

7                            CENTRAL DISTRICT OF CALIFORNIA

8    UMG RECORDINGS, INC.; CAPITAL          )  CASE NO. CV 14-3466 MMM (JPRx)
     RECORDS, LLC; UNIVERSAL MUSIC          )
9    CORP.; SONGS OF UNIVERSAL, INC.;       )
     UNIVERSAL – POLYGRAM                    )  ORDER GRANTING PLAINTIFFS'
10   INTERNATIONAL PUBLISHING, INC.;        )  MOTION TO DISMISS
     UNIVERSAL – POLYGRAM                    )  COUNTERCOMPLAINT
11   INTERNATIONAL TUNES, INC.;             )
     UNIVERSAL MUSIC – MGA NA, LLC;         )
12   UNIVERSAL MUSIC – Z TUNES LLC;         )
     RONDOR MUSIC INTERNATIONAL,            )
13   INC.; and UNIVERSAL MUSICA, INC.,      )
                                            )
14              Plaintiffs,                  )
                                            )
15        vs.                                )
                                            )
16   GLOBAL EAGLE ENTERTAINMENT,            )
     INC.; INFLIGHT PRODUCTIONS,            )
17   INFLIGHT ENTERTAINMENT                 )
     ALLIANCE, AND IFP; INFLIGHT            )
18   PRODUCTIONS USA INC. / AAEC INC.,      )
     for itself and d/b/a INFLIGHT          )
19   PRODUCTIONS, INFLIGHT                   )
     ENTERTAINMENT ALLIANCE and IFP;        )
20   INFLIGHT PRODUCTIONS LTD., an          )
     entity of unknown form; and DOES 1-20, )
21   inclusive,                              )
                                            )
22              Defendants.                  )
                                            )
23                                          )
                                            )
24   _____

25         UMG Recordings, Inc., Capital Records, LLC, Universal Music Corp. (the "record company

26   plaintiffs"),   Songs   of   Universal,   Inc.,   Universal–Polygram   International   Publishing,   Inc.,

27   Universal–Polygram International Tunes, Inc., Universal Music–MGA NA, LLC, Universal

28   Music–Tunes, LLC, and Rondor Music International, Inc., (the "music composer plaintiffs")

(collectively, "plaintiffs") filed this action against Global Eagle Entertainment, Inc. ("Global Eagle"), d/b/a Inflight Productions, Inflight Entertainment Alliance, and IFP, Inflight Productions USA Inc./AAEC Inc., for itself and d/b/a Inflight Productions, Inflight Entertainment Alliance, and IFP, Inflight Productions Ltd., (collectively, "Inflight"), and certain fictitious defendants on May 5, 2014.[1] The complaint pleads claims for infringement of sound recordings and musical compositions under the Copyright Act of 1976, 17 U.S.C. §§ 101, *et seq.*; state law copyright infringement under California Civil Code § 980(a)(2); violation of California's Unfair Competition Law ("UCL"), California Business & Professions Code § 17200; and common law unfair competition.[2]

On June 16, 2014, defendants moved to dismiss plaintiffs' third and fourth claims for state law copyright infringement and unfair competition.[3]  The court denied this motion on February 23, 2015.[4] The same day, the court granted plaintiffs leave to file a first amended complaint,[5] which they did on February 24, 2015.[6]  The amended complaint asserts the same claims as the original complaint, but adds Universal Musica, Inc. as a plaintiff and American Airlines, Inc. ("American Airlines") as a defendant. On May 15, 2015, plaintiffs filed a stipulation to dismiss American Airlines with prejudice; the court entered an order on the stipulation that day.[7]

On March 10, 2015, Global Eagle, Inflight, and Inflight Ltd. (collectively, "counterclaimants") filed counterclaims for intentional misrepresentation, fraudulent concealment, negligent misrepresentation, intentional interference with contractual relations, intentional interference with prospective business advantage, and negligent interference with prospective business advantage against

---

[1]Complaint, Docket No. 1 (May 5, 2014).

[2]*Id*. at 1.

[3]Motion to Dismiss, Docket No. 15 (Jun. 16, 2014).  See also Reply in Support of Motion to Dismiss, Docket No. 32 (Sept. 15, 2014).

[4]Order Denying Defendants' Motion to Dismiss, Docket No. 106 (Feb. 23, 2015).

[5]Order Granting Leave to File First Amended Complaint, Docket No. 107 (Feb. 23, 2015).

[6]First Amended Complaint, Docket No. 108 (Feb. 24, 2015).

[7]Order Granting Rule 41 Stipulation of Dismissal, Docket No. 218 (May 15, 2015).

all plaintiffs and also against Universal Music Group International Ltd.[8]  On April 3, 2015, plaintiffs filed a motion to dismiss the counterclaims.[9]  Counterclaimants oppose the motion.[10]

# I. FACTUAL BACKGROUND

## A.    Facts Alleged in the Complaint

Plaintiffs are various record companies and music publishers.[11]  They contend that defendants provide "various airlines" with sound recordings and music videos that the airlines publicly perform for the benefit of their passengers.[12]  Defendants allegedly have no license or other authorization to perform the copyrighted sound recordings, music videos, and musical compositions publicly, but have nonetheless reproduced, distributed, publicly performed, imported, and unlawfully advertised and promoted the sound recordings, musical compositions, and music videos "for the entertainment of airline passengers."[13]  In this way, plaintiffs assert, defendants have infringed and otherwise misused their intellectual property, which has had a material adverse impact on their revenues and profits.[14]

The record company plaintiffs allegedly hold copyrights in numerous sound recordings identified

---

[8]Counterclaim, Docket No. 118 (Mar. 10, 2015), ¶¶ 52-97

[9]Motion to Dismiss Counterclaims ("Motion"), Docket No. 142 (Apr. 3, 2015).  See also Reply in Support of Motion to Dismiss ("Reply"), Docket No. 239 (Jun. 8, 2015).   Universal Music Group International Ltd. did not join the motion.  Instead, it filed a motion to dismiss for lack of personal jurisdiction, asserting that it does not have constitutionally sufficient minimum contacts with the state of California.  (See Motion to Dismiss for Lack of Personal Jurisdiction, Docket No. 204 (Apr. 30, 2015)).  That motion is noticed for hearing on July 6, 2015.

[10]Opposition to Motion to Dismiss ("Opposition"), Docket No. 229 (June 1, 2015).

[11]First Amended Complaint ("FAC"), ¶¶ 11-25.

[12]Id., ¶ 1.

[13]Id., ¶¶ 1-2, 5, 31-33.  Plaintiffs attach an exemplar of defendants' allegedly unlawful advertising as Exhibit A-1 and A-2 to the complaint.  (See id., Exh. A-1; Exh. A-2.)

[14]Id., ¶¶ 34-35. Specifically, they contend defendants' unauthorized use of their musical compositions, sound recordings, and music videos conveys to the general public that their property is without value, and diminishes the value of the property for other purposes, including first use premiums and other exclusive uses.  (Id., ¶ 35.)

on an exhibit attached to the complaint.[15]  The music publisher plaintiffs allegedly hold copyrights in certain musical compositions identified on a separate exhibit attached to the complaint.[16]  Plaintiffs assert that defendants have willfully reproduced, distributed, publicly performed, and imported these and "hundreds, if not thousands, of additional copyrighted sound recordings, as well as copyrighted music videos" plaintiffs own in violation of 17 U.S.C. §§ 106 and 602.[17]  Alternately, they contend that, with actual or constructive knowledge of the infringing nature of the activity, defendants induced, caused, or materially contributed to infringement by others, and derived financial benefit from it.[18]  They seek statutory damages under the Copyright Act, punitive damages, injunctive relief, and attorneys' fees and costs.[19]

The record company plaintiffs also allege they possess exclusive ownership interests in

---

[15]*Id.*, ¶¶ 37-38. See also *id.*, Exh. B (List of Copyrighted Sound Recordings).  Plaintiffs reserve the right to amend the exhibit to identify additional songs about which they learn through discovery or otherwise.  (*Id.*)

[16]*Id.*, ¶¶ 45-46.  See also *id.*, Exh. C (List of Copyrighted Musical Compositions).  Plaintiffs reserve the right to amend the schedule to identify additional musical compositions about which they learn through discovery or otherwise.  (*Id.*)

[17]*Id.*, ¶¶ 39, 42, 48, 50. Under 17 U.S.C. § 106, "the owner of copyright under this title has the exclusive rights to do and to authorize any of the following: (1) to reproduce the copyrighted work in copies or phonorecords; (2) to prepare derivative works based upon the copyrighted work; (3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending; (4) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and motion pictures and other audiovisual works, to perform the copyrighted work publicly; (5) in the case of literary, musical, dramatic, and choreographic works, pantomimes, and pictorial, graphic, or sculptural works, including the individual images of a motion picture or other audiovisual work, to display the copyrighted work publicly; and (6) in the case of sound recordings, to perform the copyrighted work publicly by means of a digital audio transmission."  Under 17 U.S.C. § 602(a)(2), "[i]mportation into the United States or exportation from the United States, without the authority of the owner of copyright under this title, of copies or phonorecords, the making of which either constituted an infringement of copyright, . . . is an infringement of the exclusive right to distribute copies or phonorecords under section 106."

[18]*Id.*, ¶¶ 41, 49.

[19]*Id.*, ¶¶ 42-43, 50-51.

4

thousands of other sound recordings under California Civil Code § 980(a)(2).[20]   They assert, on information and belief, that defendants have reproduced, distributed, and publicly performed these recordings without permission, and seek injunctive relief and compensatory and punitive damages in an amount to be proved at trial.[21]   Finally, the record company plaintiffs assert an unfair competition claim under the UCL and common law.[22]   They contend that defendants' unlawful appropriation of their property rights constitutes unfair competition, and ask that the court order defendants to account for all profits and compensation obtained through their unlawful conduct and permanently enjoin any further infringement of their exclusive rights in and to the music compositions, sound recordings, and music videos.[23]   They also seek punitive damages.[24]

### B.   Facts Alleged in the Counterclaims

Counterclaimants allege that Inflight has contracts with various domestic and international airlines to provide in-flight audio entertainment for airline passengers.[25]   As part of its service, Inflight uses music produced by plaintiffs.[26]   In 2009, Infight allegedly contacted plaintiffs via Rightscom (an IP rights consultant in the United Kingdom), seeking a license to correct Inflight's "licensing gaps" in the United States.[27]   Plaintiffs purportedly agreed to the terms of a negotiated license agreement with Inflight, and promised to transmit contracts to it documenting the agreement.[28]   They assured Inflight, allegedly in bad faith, that until such time as it received the contract, its continued, unlicensed

---

[20]*Id.*, ¶ 53.

[21]*Id.*, ¶¶ 53-55.

[22]*Id.*, ¶ 58.

[23]*Id.*, ¶¶ 59-61.

[24]*Id.*, ¶ 62.

[25]Counterclaim, ¶¶ 22-24, 25.

[26]*Id.*, ¶ 34.

[27]*Id.*, ¶¶ 39-40.

[28]*Id.*, ¶ 40.

reproduction and distribution of plaintiffs' works in the United States was acceptable.[29]  Plaintiffs purportedly continued to make this representation to Inflight throughout 2010 and 2011.[30]  Counterclaimants contend that plaintiffs' representations were false,[31] and made intentionally and in wanton disregard of their rights;[32] that plaintiffs concealed their intention to seek to hold counterclaimants liable for Inflight's unlicensed use of plaintiffs' works in the United States;[33] and that, if such misrepresentations were not intentional, they were negligent.[34]  Counterclaimants argue that they reasonably relied on plaintiffs' promises and that, as a direct and proximate result of such promises, they have suffered damage.[35]

Counterclaimants also assert that plaintiffs interfered with Inflight's current contractual relationships with airlines, as well as its prospective business relationships.[36]  In November 2013, plaintiffs allegedly sent a cease-and-desist communication to Inflight.[37]  The counterclaims allege that after the cease-and-desist communication was sent and suit was filed, plaintiffs communicated directly with the domestic and international airlines Inflight serves, and sought to negotiate agreements directly with them.[38]  Consequently, Inflight was forced to discontinue its audio reproduction and distribution of plaintiffs' works in the United States and had to move all operations abroad where it has valid

---

[29]*Id.*, ¶ 41.

[30]*Id.*, ¶ 53.

[31]*Id.*, ¶ 54.

[32]*Id.*, ¶ 59.

[33]*Id.*, ¶¶ 62-64.

[34]*Id.*, ¶ 70.

[35]*Id.*, ¶¶ 58-59, 66-67, 73.

[36]*Id.*, ¶ 47.

[37]*Id.*, ¶¶ 44-46.

[38]*Id.*

licenses.  This purportedly led to severe damages.[39]  Inflight contends that plaintiffs' interference was intentional and in wanton disregard of its rights.[40]  To the extent the interference was not intentional, it asserts, it was negligent.[41]

## II.  DISCUSSION

### A.    Legal Standard Governing Motions to Dismiss Under Rule 12(b)(6)

A Rule 12(b)(6) motion tests the legal sufficiency of the claims asserted in the complaint. A Rule 12(b)(6) dismissal is proper only where there is either a "lack of a cognizable legal theory," or "the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dept.*, 901 F.2d 696, 699 (9th Cir. 1988).  The court must accept all factual allegations pleaded in the complaint as true, and construe them and draw all reasonable inferences from them in favor of the nonmoving party.  *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996); *Mier v. Owens*, 57 F.3d 747, 750 (9th Cir. 1995).

The court need not, however, accept as true unreasonable inferences or conclusory legal allegations cast in the form of factual allegations.  See *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do").  Thus, a plaintiff's complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' . . .  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); see also *Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are

---

[39]*Id.*, ¶¶ 48-51.

[40]*Id.*, ¶¶ 82, 91.

[41]*Id.*, ¶ 94.

true (even if doubtful in fact)" (citations omitted)); *Moss v. United States Secret Service*, 572 F.3d 962, 969 (9th Cir. 2009) ("[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief," citing *Iqbal* and *Twombly*).

### B.   Whether Counterclaimants' Fraud Claims Must Be Dismissed

#### 1.   The Economic Loss Rule

Plaintiffs first contend that counterclaimants' fraud claims must be dismissed because they are based entirely on the alleged breach of an oral agreement.[42]   Although they do not make specific reference to the economic loss rule, plaintiffs appear to contend that the rule bars the fraud claims. "Generally, purely economic losses are not recoverable in tort." *NuCal Foods, Inc. v. Quality Egg LLC*, 918 F.Supp.2d 1023, 1028 (E.D. Cal. 2013). "Broadly speaking, the economic loss doctrine is designed to maintain a distinction between damage remedies for breach of contract and for tort. The term 'economic loss' refers to damages that are solely monetary, as opposed to damages involving physical harm to person or property. The economic loss doctrine provides that certain economic losses are properly remediable only in contract. [It] has roots in common law limitations on recovery of damages in negligence actions in the absence of physical harm to person or property." *Giles v. General Motors Acceptance Corp.*, 494 F.3d 865, 873 (9th Cir. 2007).

The rule generally bars tort claims based on contract breaches, "thereby limiting contracting parties to contract damages." *United Guar. Mortg. Indem. Co. v. Countrywide Financial Corp.*, 660 F.Supp.2d 1163, 1180 (C.D. Cal. 2009) (citing *Aas v. Superior Court*, 24 Cal.4th 627, 643 (2000), superseded by statute on other grounds as recognized in *Rosen v. State Farm General Ins. Co.*, 30 Cal.4th 1070, 1079–80 (2003)); *Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal.App.4th 357, 367 (1997) ("It is also well settled that [the economic loss rule] ordinarily precludes recovery for economic losses under a negligence theory"); see also RESTATEMENT (THIRD) OF TORTS: Economic Harm, § 3 (2012) ("The economic loss rule states that there is no liability in tort for economic loss caused by negligent performance of a contract").

---

[42]Motion at 4.

"A breach of contract is tortious only when some independent duty arising from tort law is violated." *Erlich v. Menezes*, 21 Cal.4th 543, 554 (1999);  see also *JMP Securities LLP v. Altair Nanotechnologies Inc.*, No. 11–4498 SC, 2012 WL 3010965, *10 (N.D. Cal. July 23, 2012) ("The economic loss rule [states] that no tort cause of action will lie where the breach of duty is nothing more than a violation of a promise which undermines the expectations of the parties to an agreement" (internal quotation marks omitted)); *North American Chemical Co. v. Superior Court*, 59 Cal.App.4th 764, 774 (1997) ("the general rule [is] that where the 'negligent' performance of a contract amounts to nothing more than a failure to perform the express terms of the contract, the claim is one for contract breach, not negligence").

The California Supreme Court has noted that the economic loss rule is necessary to "prevent[ ] the law of contract and the law of tort from dissolving into one another." *Robinson Helicopter Co., Inc. v. Dana Corp.*, 34 Cal.4th 979, 988 (2004) (internal modification and quotations omitted).  Limiting recovery to contract damages in this manner makes it easier for parties to "estimate in advance the financial risks of their enterprise." *Freeman & Mills, Inc. v. Belcher Oil Co.*, 11 Cal.4th 85, 106 (1995) (Kennard, J., concurring) (quoting *Applied Equip. Corp. v. Litton Saudi Arabia Ltd.*, 7 Cal.4th 503, 515 (1994)).  As a result, the rationale for the rule is particularly strong where a party alleges a claim based on "commercial activities that negligently or inadvertently [went] awry." *Robinson Helicopter*, 34 Cal.4th at 991 n. 7.

Here, counterclaimants' fraud and negligent misrepresentation claims are based entirely on an alleged oral agreement.[43]  Counterclaimants assert that plaintiffs "represented to and promised [Inflight] that [its] continued reproduction and distribution of [their] works in the United States for use on airlines was acceptable and that a contract would follow to document the agreement between the parties."[44]  Unless counterclaimants can identify an independent duty that was violated, therefore, the claims are barred by the economic loss rule.  Counterclaimants do not attempt to do so.  Instead, they simply assert they have alleged a promissory fraud claim. See *Engalla v. Permanente Medical Group, Inc.*, 15 Cal.4th

---

[43]Motion at 4.

[44]Counterclaim, ¶ 53.

951, 973 (1997) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud").  Like other species of fraud claims, however, promissory fraud claims are subject to the economic loss rule.  See, e.g., *Audigier Brand Management v. Perez*, No. CV 12–5687–CAS (RZx), 2012 WL 5470888, *5 (C.D. Cal. Nov. 5, 2012) (concluding that a false promise claim was barred by the economic loss rule); *Oracle USA, Inc. v. XL Global Services, Inc.*, No. C. 09-00537 MHP, 2009 WL 2084154, *3 (N.D. Cal. July 13, 2009) (addressing whether a promissory fraud claim was barred by the economic loss rule).

Other district courts applying California law have similarly found tort claims barred in cases in which one party breached a purported contract that it allegedly never intended to perform. In *JMP Securities LLP v. Altair Nanotechnologies Inc.*, 880 F.Supp.2d 1029, 1032 (N.D. Cal. 2012), Altair hired JMP as its financial advisor in connection with an anticipated sale or merger.  The contract provided that JMP would be paid a retainer and that there would be a contingent fee payable on completion of a transaction.  The amount of the contingent fee was to be determined based on the type of transaction consummated and the identity of the party involved.  *Id.*  Although Altair completed a transaction covered by the agreement, it failed to pay JMP the contingent fee.  *Id.* at 1033.  JMP sued for breach of contract, promissory estoppel, fraud, and negligent misrepresentation. *Id.*  It alleged that Altair had misrepresented it would pay certain fees, knowing it would not.  *Id.* at 1042.  The court held that California's economic loss rule barred JMP's tort claims, concluding that "JMP has taken the allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts. The tort claims consist of nothing more than Altair's alleged failure to make good on its contractual promises."  *Id.* at 1042-43.

Similarly, in *Oracle USA, Inc.*, 2009 WL 2084154 at *1, Oracle contracted with XL to provide software and consulting services related to the implementation and use of the software. After XL refused to pay for certain services Oracle had provided, Oracle sued, asserting a claim for promissory fraud.  It alleged that XL had never intended to honor its promise to pay, and had made the false promise to induce Oracle to provide free services.  *Id.* at *2.  The court held that the economic loss rule barred Oracle's fraud claim because "[t]he only harm to Oracle was its failure

10

to receive payment." *Id.* at *6.  It explained:

> "In summary, XL allegedly failed to keep its promise to pay its bills, and the resulting harm to Oracle is economic in nature.  No physical harm or exposure to liability for personal damages has resulted from XL's withholding of payment.  The allegations of the complaint describe a straightforward breach of a series of agreements to make payment for services provided.  Virtually any time a contract has been breached, the party bringing suit can allege that the breaching party never intended to meet its obligations.  Businesses should not have to worry that simple disputes about bills and contract performance will routinely lead to the threat of punitive damages.  To allow claims in actions such as this one would collapse the carefully-guarded distinction between contract and tort law." *Id.* at *7.

Courts have also applied the economic loss rule to bar negligent misrepresentation claims where the purportedly negligent conduct is conceptually indistinct from a contract breach.  See *United Guar. Mortg. Co.*, 660 F.Supp.2d at 1184-85 ("For the negligence and negligent misrepresentation claims, Countrywide's allegedly tortious conduct and representations were all made pursuant to a purely contractual duty.  The bases for these claims are the representations about its underwriting standards and the specific data about individual loans, made in Exhibit B to the Commitment Letters.  By the Master Policy's terms, these representations as to each loan became part of the policy for that loan only.  Any breach based on these misrepresentations is therefore a breach of the contract that governs them (and in which they were made). . . .  Here, all the representations were made prior to, or at the moment of, contract formation.  Nor were the representations collateral to the contract.   Such representations might give rise to fraudulent inducement, but not negligence or negligent misrepresentations" (internal citations omitted)); *Lincoln General Ins. Co. v. Access Claims Adm'rs, Inc.*, No. CIV. S-07-1015 LKK/EFB, 2007 WL 2492436, *8 (E.D. Cal. Aug. 30, 2007) ("Here, two of Lincoln's claims – negligence and negligent misrepresentation – are barred by the economic loss rule.  The allegations made with regard to the breach of contract claim closely parallel those made with regard to the negligence and negligent misrepresentation claims.  For example, in the breach of contract claim, Lincoln alleges that Access

11

failed to properly investigate liability, prepare reports, handle claims in accordance with established claims procedures, and coordinate litigation activity. In the negligence claim, Lincoln alleges that Access failed to respond to Dias' demand letter, notify Lincoln of the Dias claim, and obtain legal counsel to adequately represent Lincoln. In short, the breach of contract claim subsumes the negligence and negligent misrepresentation claims" (internal citations omitted)).

This case is factually similar to *Altair* and *Oracle*. Like the plaintiffs in those cases, counterclaimants' promissory fraud and fraudulent concealment claims allege that plaintiffs had no intention of honoring their promise to permit counterclaimants to continue to reproduce the copyrighted sound recordings. Their negligent misrepresentation claim is based on the same conduct.[45] Counterclaimants effectively seek to take "allegations underpinning a straightforward claim for breach of a commercial contract and recast them as torts," which "consist of nothing more than [defendants'] alleged failure to make good on its contractual promises." *JMP Securities LLP*, 880 F.Supp.2d at 1041.

Accordingly, the fraud claims are deficiently pled and must be dismissed under the economic loss rule.[46] The court nonetheless addresses the allegations underlying each claim.

## 2.    Rule 9(b)

"Claims for fraud and negligent misrepresentation must meet the heightened pleading requirements of Rule 9(b)." *Glen Holly Entertainment, Inc. v. Tektronix, Inc.*, 100 F.Supp.2d 1086, 1093 (C.D. Cal. 1999); see also *U.S. Concord, Inc. v. Harris Graphics Corp.*, 757 F.Supp. 1053, 1058 (N.D. Cal. 1991). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud or mistake." FED.R.CIV.PROC. 9(b). "Rule 9(b) demands that, when averments of

---

[45]FAC, ¶ 94.

[46]"[I]f a 'special relationship' existed between the parties, a party can still recover when the economic loss rule would otherwise apply." *NuCal Foods, Inc.*, 918 F.Supp.2d at 1028 (citing *J'Aire Corp. v. Gregory*, 24 Cal.3d 799, 804 (1979)); see also *Avago Technologies U.S., Inc. v. Venture Corp. Ltd.*, No. C 08-03248 JW, 2008 WL 5383367, *6 (N.D. Cal. Dec. 22, 2008). Counterclaimants do not allege that they were in a special relationship with plaintiffs. If counterclaimants believe such a relationship exists, they should allege facts showing the existence of a special relationship in any amended counterclaim.

fraud are made, the circumstances constituting the alleged fraud be specific enough to give defendants notice of the *particular* misconduct so that they can defend against the charge[.]" *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003) (emphasis added and internal citations omitted). Under Rule 9(b), fraud allegations must include the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." See *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (citing *Edwards v. Marin Park, Inc.*, 356 F.3d 1058, 1066 (9th Cir. 2004)); see also *Schreiber Distributing Co. v. Serv–Well Furniture Co., Inc.*, 806 F.2d 1393, 1401 (9th Cir. 1986) ("[T]he pleader must state the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation"); *Miscellaneous Serv. Workers Local # 427 v. Philco–Ford Corp.*, 661 F.2d 776, 782 (9th Cir. 1981) (holding that Rule 9(b) requires a pleader to set forth the "time, place and specific content of the false representations as well as the identities of the parties to the misrepresentation").

Conclusory allegations are insufficient, and facts constituting the fraud must be alleged with specificity. See *Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) ("A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a defendant can prepare an adequate answer to the allegations. While statements of the time, place and nature of the alleged fraudulent activities are sufficient, mere conclusory allegations of fraud are insufficient" (citation omitted)); see also *Swartz*, 476 F.3d at 764 ("Federal Rule of Civil Procedure 9(b) requires more specificity including an account of the 'time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations.' 'To comply with Rule 9(b), allegations of fraud must be specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong,'" citing *Edwards*, 356 F.3d at 1066, and *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)); *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997) (to satisfy Rule 9(b), "the complaint [must] identif[y] the circumstances of the alleged fraud so that defendants can prepare an adequate answer" (internal quotation marks omitted)); *Flowers v. Wells Fargo Bank, N.A.*, No. C 11–1315 PJH, 2011 WL 2748650, *6 (N.D. Cal. July 13, 2011) (explaining that "[f]raud allegations must be specific enough to give defendants notice of the particular misconduct

that is alleged to constitute the fraud so that they can defend against the claim.  For corporate defendants, a plaintiff must allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written" (citations omitted)).

Where a fraudulent omission is at issue, the requirements of Rule 9(b) are relaxed, but not eliminated. *Waldrup v. Countrywide Financial Corp.*, No. 2:13–cv–08833–CAS (CWx), 2014 WL 3715131, *5 (C.D. Cal. July 23, 2014).  See also *Huntair, Inc.v. Gladstone*, 774 F.Supp.2d 1035, 1044 (N.D. Cal. 2011) (stating that the Rule 9(b) standard is somewhat relaxed when a claim rests on an alleged fraudulent omission because "a plaintiff cannot plead either the specific time of [an] omission or the place, as he is not alleging an act, but a failure to act"); *In re Apple & AT & TM Antitrust Litig.*, 596 F.Supp.2d 1288, 1310 (N.D. Cal. 2008) ("Where the claim is one of fraud by omission . . . , the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content' relative to a claim involving affirmative misrepresentations").

Plaintiffs contend that counterclaimants' fraud allegations are not sufficiently particular under Rule 9(b) because counterclaimants fail to link any specific misrepresentation to a specific defendant or person who spoke or acted on that defendant's behalf.  Nor do they allege the authority of that person to bind the defendant.[47]  The court agrees.

As a threshold matter, counterclaimants do not adequately plead the specific content of the fraudulent representations they contend were made.  See *Rosado v. eBay Inc.*, 53 F.Supp.3d 1256, 1262 (N.D. Cal. 2014) ("To that end, the allegations must contain 'an account of the time, place, *and specific content* of the false representations as well as the identities of the parties to the misrepresentations,'" quoting *Swartz*, 476 F.3d at 764 (emphasis added)).  Rather, they state, in conclusory fashion, that plaintiffs promised Inflight that its "continued reproduction and distribution of [their] works in the United States for use on airlines was acceptable and that a contract would

---

[47]Motion at 11-12.

follow to document the agreement between the parties."[48]   Although counterclaimants allege a general "agreement" that Inflight's of the sound recordings was "acceptable" they provide no details concerning the terms of the agreement; to satisfy Rule 9(b), more is required than a vague assertion that the parties agreed continued use of the sound recordings for an indefinite period was "acceptable."   Consequently, this aspect of the claim is deficient under Rule 9(b).

Nor do counterclaimants adequately allege why plaintiffs' promise was false when made.  See *Smith v. Allstate Ins. Co.*, 160 F.Supp.2d 1150, 1152 (S.D. Cal. 2001) ("the plaintiff must plead facts explaining why the statement was false when it was made" (citation omitted)); see also *Rosado*, 53 F.Supp.3d at 1262.  Counterclaimants allege a false promise by plaintiffs to permit them to continue using the sound recordings while a formal contract was being finalized.  In the context of this type of promissory fraud claim, alleging why the promise was false when made requires pleading facts from which it can be inferred that the promisor had no intention of performing at the time the promise was made.  Mere nonperformance of a promise does not suffice to show the falsity of the promise.  See *Tenzer v. Superscope, Inc.*, 39 Cal.3d 18,30-31 (1985) ("Some California cases have stated broadly that '[t]he subsequent failure to perform as promised warrants the inference that defendant did not intend to perform when she made the promise. . . .'  This may suggest that proof that a promise was made and that it was not fulfilled is sufficient to prove fraud.  This is not, and has never been, a correct statement of the law, and we disapprove the cases cited to the extent they suggest otherwise"); *Magpali v. Farmers Group, Inc.,* 48 Cal.App.4th 471, 481 (1996) ("something more than nonperformance is required to prove the defendant's intent not to perform his promise . . . [I]f plaintiff produces no further evidence of fraudulent intent than proof of nonperformance of an oral promise, he will never reach a jury").

Counterclaimants also fail adequately to plead who made the fraudulent/negligent statements and/or who concealed material facts.  Rule 9(b) "does not allow a complaint to merely lump multiple defendants together but 'require[s] plaintiffs to differentiate their allegations when suing more than one defendant . . . and inform each defendant separately of the allegations surrounding his alleged

---

[48]Countercomplaint, ¶ 53.

participation in the fraud.'" *Swartz*, 476 F.3d at 764-65 (quoting *Haskin v. R.J. Reynolds Tobacco Co.*, 995 F.Supp. 1437, 1439 (M.D. Fla. 1998)); see also *Destfino v. Reiswig*, 630 F.3d 952, 958 (9th Cir. 2011) (same); *Moore*, 885 F.2d at 541 (holding that in the context of a fraud suit involving multiple defendants, a plaintiff must, at a minimum, "identif[y] the role of [each] defendant[ ] in the alleged fraudulent scheme").

Where fraud has allegedly been perpetrated by a corporation, moreover, plaintiffs must allege the names of the employees or agents who purportedly made the fraudulent representations or omissions, or at a minimum identify them by their titles and/or job responsibilities. See, e.g., *United States ex rel. Lee v. SmithKline Beecham, Inc.*, 245 F.3d 1048, 1051 (9th Cir. 2001) (holding that Rule 9(b) was not satisfied, *inter alia*, because plaintiff did not "identify the [defendant's] employees who performed the tests, or provide any dates, times, or places the tests were conducted"); *Arch Ins. Co. v. Allegiant Prof'l Bus. Servs., Inc.*, No. CV 11-1675 CAS (PJWx), 2012 WL 1400302, *3 (C.D. Cal. Apr. 23, 2012) ("The requirement of specificity in a fraud action against a corporation requires the plaintiff to allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written"); *Dooms v. Fed. Home Loan Mortgage Corp.*, No. CV F 11-0352 LJO DLB, 2011 WL 1232989, *14 (E.D. Cal. Mar. 31, 2011) ("In a fraud action against a corporation, a plaintiff must 'allege the names of the persons who made the allegedly fraudulent representations, their authority to speak, to whom they spoke, what they said or wrote, and when it was said or written'"); *Flowers*, 2011 WL 2748650 at *6 (same).

Counterclaimants allege that plaintiffs collectively engaged in fraud by making a false promise to permit them to continue their reproduction of the sound recordings. They do not differentiate between plaintiffs, nor allege even that plaintiffs acted through their managing agents or employees. Although the complaint identifies certain individuals by name, it does not supply any information the plaintiff or plaintiffs for which they spoke, or their job titles/responsibilities.

For all of these reasons, counterclaimants have failed to plead the "who," "what," and "why" of the alleged fraud and negligent misrepresentations with sufficient particularity. Their fraud and negligent misrepresentation claims must be dismissed for this reason as well.

### 3.     Intentional Misrepresentation/Promissory Fraud

To plead a fraud claim, a party must allege (1) a knowingly false representation or fraudulent omission by the defendant; (2) an intent to deceive or induce reliance; (3) justifiable reliance by the plaintiff; and (4) resulting damages.  See, e.g., *Small v. Fritz Cos., Inc.*, 30 Cal.4th 167, 173 (2003) (stating that in California, fraud claims have five elements: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b) knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage"); *Croeni v. Goldstein*, 21 Cal.App.4th 754, 758 (1994) ("To plead a cause of action for fraud the plaintiff must allege (1) a knowingly false representation by the defendant, (2) an intent to defraud or to induce reliance, (3) justifiable reliance, and (4) resulting damages"); see also *City Solutions Inc. v. Clear Channel Communications, Inc.*, 365 F.3d 835, 839 (9th Cir. 2004).

Promissory fraud is a subspecies of fraud.  A plaintiff asserting a promissory fraud claim must plead and prove that the defendant made a promise to him that it had no intention of performing.  See *Lazar v. Superior Court*, 12 Cal.4th 631, 638 (1996) ("A promise to do something necessarily implies the intention to perform; hence, where a promise is made without such intention, there is an implied misrepresentation of fact that may be actionable fraud"); see also *Cedars Sinai Med. Ctr. v. Mid-W. Nat. Life Ins. Co.*, 118 F.Supp.2d 1002, 1013 (C.D. Cal. 2000) ("A suit for fraud and deceit will only lie when one makes a promise of future conduct with no intention, at the time of the promise, of actually performing that promise," citing *Tarmann v. State Farm Mut. Auto. Ins. Co.*, 2 Cal.App.4th 153, 159 (1991)).  As noted, intent not to perform cannot be proved simply by showing a subsequent failure to perform.  See *Tenzer*, 39 Cal.3d at 30-31; *Magpali,* 48 Cal.App.4th at 481.

Counterclaimants fail to allege any false representation or promise.  They merely plead that plaintiffs' "representations and promises were false when they were made," and that they "knew [their] representations were false when they were made."  Although allegations of scienter need not meet Rule 9(b)'s specificity requirement, these allegations are insufficient even to satisfy Rule 8(a).  See *Twombly*, 550 U.S. at 555 ("While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to

relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"). "Although intent can be averred generally under Rule 9(b), a plaintiff must point to facts which show that defendant harbored an intention not to be bound by terms of the contract at formation." *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. CV 07-CV-912 IEG-BLM, 2007 WL 2206946, *6 (S.D. Cal. July 27, 2007) (quoting *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002); *Richardson v. Reliance Nat'l Indemnity Co.*, No. CV 99-2952, 2000 WL 284211, *4 (N.D. Cal. Mar. 9, 2000)). The only allegation in the complaint that might give rise to an inference that the promise was made with no intention of performing is the fact that plaintiffs allegedly did not honor it. As noted, nonperformance alone will not support a finding of promissory fraud. See *Tenzer*, 39 Cal.3d at 30 ("something more than nonperformance is required to prove the defendant's intent not to perform his promise"); see also *Mat-Van*, 2007 WL 2206946 at *6 ("In the instant case, the only allegations in the complaint that could demonstrate defendants' fraudulent intent are claims that defendant ultimately did not perform the material terms of the contract. Plaintiffs' reliance on nonperformance as circumstantial evidence of defendants' fraudulent intent at the time of contract formation is misplaced"); *Sunnyside Development Co., LLC v. Opsys Limited*, No. C 05-0553 MHP, 2005 WL 1876106, *5-6 (N.D. Cal. Aug. 8, 2005) ("[T]he mere fact that a party breaches a promise to perform a condition of contract is as a matter of law insufficient to give rise to an inference that the breaching party acted with fraudulent intent at the time that the promise was made"); *Smith*, 160 F.Supp.2d at 1153-54 (merely alleging that defendant breached a contract did not adequately plead that it entered into the agreement with no intent to perform).

Because counterclaimants allege insufficient facts to support an inference that plaintiffs' purported promise to permit them to continue reproducing the sound recordings was made with no intention of performing, they have not alleged a plausible promissory fraud claim. For this reason as well, his claim must be dismissed.

### 4.   Fraudulent Concealment

Counterclaimants' fraudulent concealment claim is linked to their promissory fraud claim. They assert that plaintiffs "represented that [Inflight's] continued reproduction and distribution of [plaintiffs'] works in the United States for use on airlines was acceptable, but [ ] intentionally failed to disclose that

1  [they] secretly intended to maintain the right . . . to seek to impose liability, including statutory damages,

2  on [Inflight] and its airline customers (i.e., in an amount in excess of the license fee that [plaintiffs]

3  agreed to accept from [Inflight] for its activities)."[49]

4      "To maintain a cause of action for fraud through nondisclosure or concealment of facts, there

5  must be allegations demonstrating that the defendant was under a legal duty to disclose those facts."

6  *Los Angeles Mem'l Coliseum Comm'n v. Insomniac, Inc.*, 233 Cal.App.4th 803, 831 (2015) (citing *OCM*

7  *Principal Opportunities Fund, L.P. v. CIBC World Markets Corp.*, 157 Cal.App.4th 835, 845 (2007)).

8  "There are four circumstances in which nondisclosure or concealment may constitute actionable fraud:

9  (1) when the defendant is in a fiduciary relationship with the plaintiff; (2) when the defendant had

10  exclusive knowledge of material facts not known to the plaintiff; (3) when the defendant actively

11  conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations but

12  also suppresses some material facts." *LiMandri v. Judkins*, 52 Cal.App.4th 326, 336 (1997) (quoting

13  *Heliotis v. Schuman*, 181 Cal.App.3d 646, 651 (1997) (internal quotation marks omitted)).

14      Counterclaimants argue that plaintiffs made partial representations because they agreed to permit

15  counterclaimants to engage in continued reproduction and distribution of the sound recordings while

16  secretly harboring the intention of suing for damages in excess of the agreed royalty. "Even where no

17  duty to disclose would otherwise exist, where one does speak he must speak the whole truth to the end

18  that he does not conceal any facts which materially qualify those stated." *Vega v. Jones, Day, Reavis*

19  *& Pogue*, 121 Cal.App.4th 282, 292 (2004). Counterclaimants' allegations nonetheless fail, however,

20  because they do not plausibly plead that plaintiffs had no intention of honoring the purported agreement

21  to permit continued reproduction of the sound recordings; the only allegation that supports this assertion

22  in any way is plaintiffs' purported non-performance. See *Smith*, 160 F.Supp.2d at 1153-54 (merely

23  alleging that defendant breached a contract did not adequately plead that it entered into the agreement

24  with no intent to perform). For that reason, they have not plausibly alleged a partial representation

25

26

27

28      [49]Counterclaim, ¶ 62.

1   sufficient to support imposition of a duty to disclose.[50]

2   ### 5.   Negligent Misrepresentation

3   "The elements of negligent misrepresentation are (1) the misrepresentation of a past or existing

4   material fact, (2) without reasonable ground for believing it to be true, (3) with intent to induce another's

5   reliance on the fact misrepresented, (4) justifiable reliance on the misrepresentation, and (5) resulting

6   damage." *Apollo Capital Fund, LLC v. Roth Capital Partners, LLC,* 158 Cal.App.4th 226, 243 (2007)

7   (citing *Shamsian v. Atlantic Richfield Co.*, 107 Cal.App.4th 967, 983 (2003)); see also CAL. CIV. CODE

8   § 1710(2) (defining "[d]eceit" as including "[t]he assertion, as a fact, of that which is not true, by one

9   who has no reasonable ground for believing it to be true").

10   Unlike fraud, "negligent misrepresentation does not require knowledge of falsity." *Apollo*

11   *Capital Fund*, 158 Cal.App.4th at 243. "Instead, a person who makes false statements, honestly

12   believing that they are true, may still be liable for negligent misrepresentation if he or she has no

13   reasonable grounds for such belief. Also unlike fraud, negligent misrepresentation requires a positive

14   assertion to show a misrepresentation of material fact; an omission or an implied assertion will not

15   suffice." *Cutler v. Rancher Energy Corp.*, No. CV 13-00906 DOC, 2014 WL 1153054, *7 (C.D. Cal.

16   Mar. 11, 2014).

17   The parties agree that counterclaimants' negligent misrepresentation claim "is essentially

18   identical to . . . [the] intentional misrepresentation claim."[51]  Where a plaintiff states a fraud claim, *a*

19   *fortiori* it states a negligent misrepresentation claim. Cf. *Apollo Capital Fund*, 158 Cal.App.4th at 243-

20   44 ("Our conclusion that the complaint states a claim for fraud against Roth based on the affirmative

21   oral representations discussed in part I.A.1. *ante* necessarily means it states a claim for negligent

22   
_____

23   [50]Counterclaimants also assert that plaintiffs had exclusive knowledge of their intent not to

24   perform, which was unknown to counterclaimants. Although exclusive knowledge of a fact will support imposition of a duty to disclose, counterclaimants' failure plausibly to allege intent not to perform

25   precludes their reliance on this exception. See *Goodman v. Kennedy*, 18 Cal.3d 335, 347 (1976) (duty to disclose may arise "when one party to a transaction has sole knowledge or access to material facts

26   and knows that such facts are not known to or reasonably discoverable by the other party").

27   [51]Opposition at 8; Motion at 12 ("Defendants' third counterclaim for negligent misrepresentation relies on and merely incorporates by reference the same alleged representations used to support

28   Defendants' claims for intentional misrepresentation and concealment").

representation").  In this case, however, the court must find the negligent misrepresentation claim deficient for the same reasons it found the intentional misrepresentation claim deficient unless counterclaimants have adequately alleged that plaintiffs had no reasonable grounds for believing their representations to be true.  Counterclaimants do not.  Counterclaimants plead no facts supporting their bare allegation that plaintiffs "had no reasonable grounds for believing that [their] representations [concerning intent to perform] were true when made."  This is a legal conclusion that does not satisfy Rule 8(a).  See *Telesaurus VPC, LLC v. Power*, 623 F.3d 998, 1003 (9th Cir. 2010) ("We disregard '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements,'" quoting *Iqbal*, 556 U.S. at 678); *Warren v. Fox Family Worldwide, Inc*., 328 F. 3d 1136, 1139 (9th Cir. 2003) ("[W]e are not required to . . . assume the truth of legal conclusions merely because they are cast in the form of factual allegations"); *Cutler*, 2014 WL 1153054 at *9 ("There must be some showing that the speaker's belief was unreasonable.  The only language in the complaint concerning this element reads in conclusory, formulaic fashion: 'Plaintiffs are informed and believe and based thereon allege that the representations . . . by defendant Works were false at the time they were made, and that he made them negligently . . . with  no reasonable grounds for believing they were true.'  This is insufficient to satisfy the pleading standard of *Twombly* and *Iqbal*.").  Counterclaimants' negligent misrepresentation claim is therefore deficient and must be dismissed.

## C.     Whether Counterclaimants' Interference Claims Must Be Dismissed

Plaintiffs next contend that counterclaimants' interference claims are barred by the *Noerr-Pennington* doctrine and the competition privilege.[52]  They also assert that the claims are not adequately alleged.[53]  The court addresses each contention in turn.

### 1.     *Noerr-Pennington* Doctrine and California Litigation Privilege

"Under the *Noerr–Pennington* doctrine, those who petition any department of the government for redress are generally immune from statutory liability for their petitioning conduct." *Sosa v.*

---

[52]The competition privilege is addressed specifically as to the intentional interference with economic advantage claim.

[53]Motion at 14.

*DIRECTV, Inc.*, 437 F.3d 923, 929 (9th Cir. 2006).  The doctrine derives from two Supreme Court cases holding that the First Amendment Petition Clause immunizes acts of petitioning the legislature from antitrust liability.  *Id.* (citing *Eastern Railroad Presidents Conference v. Noerr Motor Freight, Inc.,* 365 U.S. 127 (1961), and *United Mine Workers v. Pennington,* 381 U.S. 657 (1965)).  "The doctrine has since been applied to actions petitioning each of the three branches of government, and has been expanded beyond its original antitrust context."  *Theme Promotions, Inc. v. News America Marketing FSI*, 546 F.3d 991, 1007 (9th Cir. 2008).  "[T]he *Noerr–Pennington* doctrine applies to [ ] state law tortious interference with prospective economic advantage claims."  *Id.*  It can be applied in tandem with the California litigation privilege.  *Id.* ("There is no reason that *Noerr–Pennington* and California privilege law cannot both apply to Theme's intentional interference claims, and we hold that the district court properly considered both doctrines").

The litigation privilege provides that any "publication" or "broadcast" made in any "judicial proceeding" is privileged.  CAL. CIV. CODE § 47(b).  The privilege "has been given broad application," and "is now held applicable to any communication, whether or not it amounts to a publication . . . and [to] all torts except malicious prosecution."  *Silberg v. Anderson*, 50 Cal.3d 205, 211-12 (1990).  "Further, it applies to any publication required or permitted by law in the course of a judicial proceeding to achieve the objects of the litigation, even though the publication is made outside the courtroom and no function of the court or its officers is involved."  *Id.* at 212.  "The usual formulation is that the privilege applies to any communication (1) made in judicial or quasi-judicial proceedings; (2) by litigants or other participants authorized by law; (3) to achieve the objects of the litigation; and (4) that ha[s] some connection or logical relation to the action."  *Id.*

Counterclaimants' interference claims are based, in part, on a November 20, 2013 cease-and-desist letter sent to Inflight.[54]  "Conduct incidental to a lawsuit, including a pre-suit demand letter [or cease-and-desist letter], falls within the protection of the *Noerr–Pennington* doctrine," *Theme*

---

[54]Counterclaim, ¶ 78 ("When UNIVERSAL MUSIC sent its November 20, 2013 cease-and-desist communication to IFP, UNIVERSAL MUSIC knew that its communication was made in bad faith and contrary to its earlier representations, promises and other conduct and that its communication would disrupt IFP's performance of the Airline Contracts.").

*Promotions*, 546 F.3d at 1007  (citing *Sosa*, 437 F.3d at 936-38), "unless the threatened lawsuit was a 'sham.'"  *Rock River Communications, Inc. v. Universal Music Group, Inc*., 745 F.3d 343, 351 (9th Cir. 2014) ("Rock River's IIPEA claim seeks to hold UMG liable based on the cease-and-desist letters and threats of litigation UMG made to Rock River's business partners.  Under the *Noerr–Pennington* doctrine, such pre-litigation material is immune from suit unless the threatened lawsuit was a 'sham'").

A "sham" lawsuit is one that is both "objectively baseless in the sense that no reasonable litigant could realistically expect success on the merits," and "an attempt to interfere directly with the business relationship of a competitor through the use of the governmental *process* – as opposed to the outcome of that *process*."  *Professional Real Estate Investors, Inc. v. Columbia Pictures Indusries, Inc*., 508 U.S. 49, 60–61 (1993) (alteration, citation and internal quotation marks omitted); *EcoDisc Tech. AG v. DVD Format/Logo Licensing Corp*., 711 F.Supp.2d 1074, 1083 (C.D. Cal. 2010) ("To establish DVDFLLC's conduct here was a 'sham,' Plaintiff must prove (1) DVDFLLC's alleged threats were objectively baseless in the sense that it could not have reasonably expected to prevail in litigation *and* (2) DVDFLLC's subjective motivation was to interfere with Plaintiff's business relationships").

Counterclaimants do not allege that this lawsuit is objectively baseless.  Instead, they assert that plaintiffs sent the cease-and-desist letter "in bad faith and contrary to [their] earlier representations."[55] Even if the court were to deem counterclaimants' "bad faith" allegation tantamount to pleading that the suit is objectively baseless. i.e., that there is no reasonable expectation plaintiffs can prevail at trial (and it is not clear this is so), counterclaimants do not plead facts that plausibly suggest plaintiffs have no reasonable expectation of success.  In particular, although they a general agreement that Inflight's continued reproduction and distribution of plaintiffs' sound recordings was "acceptable," neither the terms of the agreement nor counterclaimants' compliance with them is alleged.  There are thus no allegations that support a plausible inference that the alleged threats in the cease-and-desist letter were objectively baseless.

Counterclaimants dispute this.  They cite *eBay, Inc. v. Bidder's Edge, Inc*., No. CV 99-21200 RMW, 2000 WL 1863564, *2 (N.D. Cal. July 25, 2006), for the proposition that whether the *Noerr-*

---

[55]Counterclaint, ¶ 78.

*Pennington* doctrine applies is a fact-bound inquiry that is not appropriate for resolution in the context of a motion to dismiss.  In *eBay*, the court declined to dismiss plaintiff's claims "under the *Noerr-Pennington* doctrine because at least some of eBay's allegedly anti-competitive conduct, . . . [was] unrelated to any protected activity."  *Id.*  Although it "appear[ed] that some of the conduct complained of in the counterclaims [might] fall under . . . *Noerr-Pennington* immunity," including a cease-and-desist letter, the court concluded that the "appropriate means for eliminating insufficient theories of liability [wa]s a motion for partial summary adjudication."  *Id.*  The court is unpersuaded by the *eBay* court's apparent conclusion that it was not appropriate to dismiss certain aspects of a claim under the *Noerr-Pennington* doctrine because the doctrine did not apply to other aspects of the same claim.  To the extent counterclaimants' interference claim is based on the cease-and-desist letter, they fail plausibly to allege that the letter falls outside the ambit of the *Noerr-Pennington* doctrine because it threatened sham litigation.  As alleged, any claim based on the cease-and-desist letter lacks facial plausibility, and must be dismissed under Rule 8 and the Supreme Court's decisions in *Twombly* and *Iqbal*.

The court reaches the same result respecting application of the California litigation privilege.  Counterclaimants assert that the litigation privilege does not apply to communications made in "bad faith."  As they concede in a parenthetical description of the case they cite for this proposition, however, the exception concerns anti-SLAPP motions – not the litigation privilege.  See *Bailey v. Brewer*, 197 Cal.App.4th 781, 790 (2011) (concluding that an interference claim survived an anti-SLAPP motion because the sender of a cease-and-desist letter could not, in good faith, have believed he had a legally viable claim as asserted in the letter).  In contrast to the anti-SLAPP context, there is no exception to the litigation privilege for communications made in bad faith.  See *Adobe Sys. Inc. v. Coffee Cup Partners, Inc.*, No. CV 11-02243 CW, 2012 WL 3877783, *12 (N.D. Cal. Sept. 6, 2012) ("[T]he presence or absence of malice or good or bad faith is irrelevant to the inquiry whether the litigation privilege is applicable," quoting *Mansell v. Otto*, 108 Cal.App.4th 265, 279 n. 47 (2003) (collecting cases)); see also *Collins v. Allstate Indem. Co.*, 428 Fed. Appx. 688, 689 (9th Cir. Apr. 15, 2011) (Unpub. Disp.) (same); *Action Apartment Ass'n, Inc. v. City of Santa Monica*, 41 Cal.4th 1232, 1251 (2007) ("publications which are made without a good faith belief in their truth . . . are protected as part

of the price paid for affording litigants the utmost freedom of access to the courts") .  Thus, the interference claims, to the extent premised on the cease-and-desist letter, must be dismissed pursuant to California's litigation privilege as well.

### 2.    Intentional Interference With Contractual Relations

To state a claim for intentional interference with contractual relations, a plaintiff must allege: "(1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal.4th 26, 55 (1998) (quoting *Pacific Gas & Electric Co. v. Bear Stearns & Co.*, 50 Cal.3d 1118, 1126 (1990) (internal quotation marks omitted)).  "Because interference with an existing contract receives greater solicitude than does interference with prospective economic advantage, it is not necessary that the defendant's conduct be wrongful apart from the interference with the contract itself."  *Id.* (citing *LiMandri v. Judkins*, 52 Cal. App. 4th 326, 344 (1997)).

Plaintiffs argue that counterclaimants fail to plead facts that identify the specific contractual relationships with which they purportedly interfered.  Counterclaimants allege that they had "Airline Contracts," and that they were attempting to enter into additional contracts; they supply no facts concerning the identity of any third party with whom they had contracted, however.  This requires dismissal of the claim, because "to understand whether [counterclaimants'] performance was disrupted require[s] the district court to determine what contractual rights [they] possess[ed]."  See *United National Maintenance, Inc. v. San Diego Convention Center, Inc.*, 766 F.3d 1002, 1009 (9th Cir. 2014); *In re Centerstone Diamonds, Inc.*, No. 09 BK 23945 PC, 2014 WL 1330186, *6 (Bankr. C.D. Cal. Apr. 2, 2014) ("In pleading his Third Claim for Relief, Leslie simply recites in the Complaint the elements of a cause of action for intentional interference with contractual relations with little supporting facts.  Leslie does not allege facts identifying a specific contract, the parties thereto, or the substance and date thereof.  The Complaint states only that 'there were valid contractual relationships that existed between the Debtors and multiple customers and consignees.'  In his opposition, Leslie argues that such contracts and customers are sufficiently alleged in paragraph 71 of the Complaint, which refers to a 'Consignment Agreement with FCC' and identifies an alleged overlap between customers and

consignees of the debtors and Beaudry's non-debtor entities. These facts standing alone are insufficient to state a plausible claim for relief for alleged intentional interference with contractual relations").

To plead the claim adequately, counterclaimants must identify the third party or parties with whom they contracted, and the nature and extent of their relationship with that party or parties. Compare *Brian Lichtenberg, LLC v. Alex & Chloe, Inc.*, No. CV 13-06837 DDP (PJWx), 2014 WL 585436, *7 (C.D. Cal. Feb. 13, 2014) ("Defendants argue that Plaintiffs do not identify any specific third parties with whom Plaintiffs had an economic relationship or any specific contracts with those customers. Defendants ignore, among other allegations, paragraph 81 of the FAC, which specifically lists ten different companies with which Brian maintained economic and contractual relations. . . . Counts 6 and 7 are adequately pled."); *Employee Painters' Trust v. Pac. Nw. Contractors, Inc.*, No. C13 5018 BHS, 2013 WL 1858532, *2 (W.D. Wash. May 2, 2013) ("Moreover, the Alliance Defendants have correlated this allegation to, at least, the specific contract between them and their surety bonding company"). Because they fail to do so, counterclaimants' intentional interference with contractual relations claim is deficient and must be dismissed.

### 3.      Intentional Interference With Prospective Business Advantage

To plead a claim for intentional interference with prospective business advantage, a plaintiff must allege "(1) a specific economic relationship between the plaintiff and some third person containing the probability of future economic benefit to the plaintiff; (2) knowledge by defendant of the existence of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) damages proximately caused by the defendant's acts." *Panavision Int'l, L.P. v. Toeppen*, 945 F.Supp. 1296, 1305 (C.D. Cal. 1996) (citing *Eichman v. Fotomat Corp.*, 871 F.2d 784, 800 (9th Cir. 1989); *Youst v. Longo*, 43 Cal.3d 64, 71 n. 6 (1987); *Buckaloo v. Johnson*, 14 Cal.3d 815, 826-29 (1975)), aff'd, 141 F.3d 1316 (9th Cir. 1998).

Plaintiffs assert this claim is barred by the competition privilege. It was once "settled that an affirmative defense to the tort of interference with prospective economic advantage [wa]s the privilege of competition." *San Francisco Design Ctr. Associates v. Portman Companies*, 41 Cal.App.4th 29, 40 (1995). It was equally settled that, to "defeat the privilege the defendant's conduct [had to] be unlawful or illegitimate." *Id.* at 42; *A-Mark Coin Co. v. General Mills, Inc.*, 148 Cal.App.3d 312, 324 (1983)

("'[I]t is no tort to beat a business rival to prospective customers. Thus, in the absence of prohibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiations behind the plaintiff's back, refuse to deal with him or threaten to discharge employees who do, or even refuse to deal with third parties unless they cease dealing with the plaintiff, all without incurring liability'").

In *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal.4th 376 (1995), however, the California Supreme Court "disapproved of treating the defendant's justification, or privilege to interfere with prospective economic relations as an affirmative defense. Rather, '[i]n light of the particular importance of free competition in the area of noncontractual business relations, it held instead that . . . 'a plaintiff seeking to recover for an alleged interference with prospective contractual or economic relations must plead and prove as part of its case-in-chief that the defendant not only knowingly interfered with the plaintiff's expectancy, but engaged in conduct that was wrongful by some legal measure other than the fact of interference itself.'" *Gemini Aluminum Corp. v. California Custom Shapes, Inc*., 95 Cal.App.4th 1249, 1256 (2002) (quoting *Westside Ctr. Associates v. Safeway Stores 23, Inc*., 42 Cal.App.4th 507, 521 n. 16 (1996) (in turn citing *Della Penna*, 11 Cal.4th at 393 (emphasis in *Gemini* removed)). Stated differently, after *Della Penna*, the competition privilege is no longer an affirmative defense; "[i]t is . . . the plaintiff's burden to prove, as an element of the cause of action itself, that the defendant's conduct was independently wrongful." *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002).

Plaintiffs contend that counterclaimants have failed to allege any conduct that is "wrongful 'by some measure beyond the fact of the interference itself.'" *Della Penna*, 11 Cal.4th at 393. To satisfy this element, counterclaimants must plead conduct "proscribed by some constitutional, statutory, regulatory, common law, or other determinable legal standard." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal.4th 1134, 1159 (2003).

In their opposition, counterclaimants assert that their fraud claims plead independently wrongful acts that render the competition privilege inapplicable.[56] Fraud qualifies as an independently wrongful

---

[56]Opposition at 14.

act, but only if it adequately pled.  See *BioResource, Inc. v. U.S. PharmaCo Distribution, Ltd.*, No. CV10-01053 SI, 2010 WL 3853025, *3 (N.D. Cal. Sept. 29, 2010) ("While fraud and misrepresentation can constitute independently wrongful conduct to support a claim for intentional interference with prospective economic advantage, those allegations must satisfy Federal Rule of Civil Procedure 9(b)). "Because [counterclaimants] ha[ve] not adequately pled a separate cause of action such as fraud . . . as the basis of independently wrongful conduct, [they] fail[ ] to allege a cause of action for interference with prospective business relations."  *Bus. Integration Tech. v. MuleSoft Inc*., No. CV 11 04782 EDL, 2011 WL 5914012, *8 (N.D. Cal. Nov. 28, 2011).

Plaintiffs also maintain the claim must be dismissed because counterclaimants do not identify any prospective business relationship with which they interfered.  "Courts have held that, in order to state a claim for intentional interference with prospective business advantage, it is essential that the [claimant] allege facts showing that [d]efendant interfered with [a] relationship with a particular individual."  *Damabeh v. 7 Eleven, Inc.*, No. 12-CV-01739 LHK, 2013 WL 1915867, *10 (N.D. Cal. May 8, 2013); see also *Amaretto Ranch Breedables, LLC v. Ozimals, Inc*., No. CV 10-5696 CRB, 2013 WL 3460707, *7 (N.D. Cal. July 9, 2013) ("Amaretto argues that Ozimals was 'well aware that Amaretto had economic relationships with Second Life customers' and that Ozimals intentionally disrupted Amaretto's business during the holiday season by publishing defamatory statements and committing trade libel.  But, in order to state a claim for intentional interference with prospective business advantage, it is essential that the plaintiff allege facts showing that the defendant interfered with the plaintiff's relationship with a particular individual").  Allegations that a defendant interfered with a relationship with an "as yet unidentified" customer will not suffice.  See, e.g., *Westside Ctr. Associates v. Safeway Stores 23, Inc*., 42 Cal.App.4th 507, 527 (1996) ("Without an existing relationship with an identifiable buyer, [plaintiff's] expectation of a future sale was 'at most a hope for an economic relationship and a desire for future benefit'").

Here, none of the purported prospective relationships is identified.  Counterdefendants' intentional interference with prospective business advantage claim must be dismissed for this reason as well.  See *Damabeh*, 2013 WL 1915867 at *10 ("Plaintiff has not identified the particular relationships or opportunities with which Defendant is alleged to have interfered.  Plaintiff alleges that Defendant

28

interfered 'with [Plaintiff's] employees and customers.'   However, Plaintiff does not specifically identify any of these employees and customers. Accordingly, Plaintiff's interference with prospective business advantage claims fail").

### 4.    Negligent Interference with Prospective Business Advantage

The tort of negligent interference with prospective business advantage has many of the same elements as an intentional interference with prospective business advantage claim.  To plead such a claim adequately, a plaintiff must allege that "(1) an economic relationship existed between the plaintiff and a third party which contained a reasonably probable future economic benefit or advantage to plaintiff; (2) the defendant knew of the existence of the relationship and was aware or should have been aware that if it did not act with due care its actions would interfere with this relationship and cause plaintiff to lose in whole or in part the probable future economic benefit or advantage of the relationship; (3) the defendant was negligent; and (4) such negligence caused damage to plaintiff in that the relationship was actually interfered with or disrupted and plaintiff lost in whole or in part the economic benefits or advantage reasonably expected from the relationship."  *North American Chemical Co.*, 59 Cal.App.4th at 786.

As with a claim for intentional interference with prospective business advantage, "a plaintiff alleging negligent interference with prospective business advantage must identify with particularity the relationships or opportunities with which [d]efendant is alleged to have interfered."  *Damabeh*, 2013 WL 1915867 at *10; *Blue Dolphin Charters, Ltd. v. Knight & Carver Yachtcenter, Inc.*, No. 11-CV-565-L-WVG, 2011 WL 5360074, *5 (S.D. Cal. Nov. 3, 2011) (finding an "allegation that the defendant interfered with 'speculative' future customers [was] insufficient" to plead negligent interference with prospective business advantage).  Because no specific relationships are alleged, the court must dismiss this claim as deficiently pled.[57]

_____

[57]Plaintiffs also argue that the claim fails because counterclaimants have "failed to show that [plaintiffs] owed [them] a duty of care."  *Damabeh*, 2013 WL 1915867 at *9.  "The tort of negligent interference with economic relationship arises only when the defendant owes the plaintiff a duty of care."  *LiMandri*, 52 Cal.App.4th at 348.  Counterdefendants do not allege that a duty of care existed, and the claim is deficient for this reason as well.

Plaintiffs maintain that counterclaimants were in direct competition with them, such that there

### D.      Whether the Court Should Grant Leave to Amend

Plaintiffs maintain that the court should dismiss the counterclaim without leave to amend. "Dismissal without leave to amend is improper unless it is clear . . . that the [claims] could not be saved by . . . amendment." *In re Daou Sys., Inc*., 411 F.3d 1006, 1013 (9th Cir. 2005); see *Kendall v. Visa U.S.A., Inc.*, 518 F.3d 1042, 1051 (9th Cir. 2008) ("Dismissal without leave to amend is proper if it is clear that the complaint could not be saved by amendment"); *California ex rel. California Department of Toxic Substances Control v. Neville Chemical Co.*, 358 F.3d 661, 673 (9th Cir. 2004) ("[D]enial of leave to amend is appropriate if the amendment would be futile," citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).   This is the first time the court has had occasion to pass on the sufficiency of the counterclaim.   While counterclaimants failed to allege viable claims, it appears they may be able to amend to plead plausible claims for relief.   This is especially true given their assertion that a "rich discovery record" supports the claims.[58] The court therefore grants counterclaimants leave to amend.

### III.  CONCLUSION

For the reasons stated, the court grants plaintiffs' motion to dismiss the counterclaim with leave to amend.   Counterclaimants may file an amended counterclaim within twenty (20) days of the date of this order if they are able to remedy the deficiencies the court has noted.

----

can be no duty as a matter of law.   This is not clear from the allegations in the counterclaim, however. Inflight supplies airlines with inflight entertainment, while plaintiffs are record labels and music composers. While there is some degree of overlap between the parties' businesses, neither the complaint nor the counterclaim suggests that plaintiffs would supply, or have supplied airlines with content directly.   There are no allegations in the counterclaim that suggest plaintiffs and counterclaimants are in competition, direct or otherwise.   Cf. *Singman v. NBA Properties, Inc*., No. CV 13-05675 ABC (SHx), 2014 WL 7892049, *5 (C.D. Cal. Jan. 17, 2014) ("Here, Plaintiff *has* alleged that he and NBA Properties were competitors.   This allegation forecloses Plaintiff's negligent interference claim against NBA Properties."); *Stolz v. Wong Communications Limited Partnership*, 25 Cal.App.4th 1811, 1825 (1994) (holding that a "[negligent interference claim] arises only when the defendant owes the plaintiff a duty of care" and stating that plaintiff's complaint "did not allege such a duty, nor could it, since it was plain that plaintiff and defendant were competitors").   At this stage of the proceedings, given counterclaimants' failure to allege any facts suggesting a duty of care, the court declines to address whether they cannot allege a duty as a matter of law.

[58]See Opposition at 4-5, 10, 15.

30

Counterclaimants may not plead additional claims or add allegations that are not intended to cure the specific defects the court has noted.  Should any amended counterclaim exceed the scope of leave to amend granted by this order, the court will strike the offending portions under Rule 12(f).  See FED.R.CIV.PROC. 12(f) ("The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter.  The court may act: (1) on its own; or (2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading"); see also *Barker v. Avila*, No. 2:09-cv-00001-GEB-JFM, 2010 WL 3171067, *1-2 (E.D. Cal. Aug. 11, 2010) (striking an amendment to a federal law claim where the court had granted leave to amend only state law claims).

DATED: June 22, 2015

MARGARET M. MORROW
UNITED STATES DISTRICT JUDGE

31