JEFFREY D. GOLDMAN (Bar No. 155589)
BRIAN YATES (Bar No. 241798)
TALYA GOLDFINGER (Bar No. 294926)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone:  (310) 203-8080
Facsimile:   (310) 203-0567

Attorneys for Plaintiffs and Certain Counter-Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC. a Delaware corporation; et al.,<br><br>　　　　Plaintiffs,<br><br>　v.<br><br>GLOBAL EAGLE ENTERTAINMENT INC. a Delaware corporation, et al.,<br><br>　　　　Defendants.<br><br>AND RELATED COUNTERCLAIMS | CASE NO. 2:14-cv-03466-MMM (JPR)<br><br>*Assigned to Hon. Margaret M. Morrow*<br><br>**REPLY IN SUPPORT OF MOTION FOR REVIEW OF NONDISPOSITIVE RULING OF MAGISTRATE JUDGE DATED MAY 22, 2015**<br><br>Date:　　　　August 31, 2015<br>Time:　　　　10:00 a.m.<br>Ctrm:　　　　780<br><br>Complaint filed:　　May 5, 2014<br>Discovery cutoff:　　September 11, 2015<br>Pretrial Conference: January 11, 2016<br>Trial:　　　　　　　February 9, 2016 |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiffs' Motion for Review sets forth a simple and purely legal issue for review. Most of Defendants' opposition avoids this central issue in favor of a variety of red herrings that are irrelevant to the basic legal issue before the Court. Defendants admit the "crux" of their defense is "that, as a result of direct communications between [Plaintiffs] and IFP's consultant, Mark Isherwood, IFP was led to believe that it could continue its ongoing activities in the United States, without fear or reprisal, while the parties worked toward a license agreement." Opp. at 2. Nothing about the current discovery order addresses that "crux" issue and no one has foreclosed Defendants from taking discovery about the parties' (few and far between) communications.

To justify their admittedly secondary, at best, defense that Plaintiffs' actions toward ***third parties*** are somehow relevant, Defendants' opposition repeats a theme that resonated with the Magistrate Judge – that discovery is broad and the parties should be permitted to explore largely anything they want, regardless of whether it will ever amount to admissible evidence, because ***this Court*** has not yet ruled on the threshold legal issue. This is precisely why Plaintiffs brought this motion. "Discovery … is not unlimited; 'like all matters of procedure, it has ultimate and necessary boundaries.'" *Schreib v. American Family Mut. Ins. Co.*, 304 F.R.D. 282, 284 (W.D. Wash. 2014) (citation omitted). Regardless of whether the discovery presently at issue is unduly burdensome, if it is legally irrelevant – and it is – it is impermissible under Fed. R. Civ. P. 26. A ruling on this threshold, purely legal issue will not only demarcate the proper bounds of discovery in this case, but will also serve the additional salutary purpose of saving the parties and the Court the massive time and effort of slogging through, on summary judgment, voluminous evidence debating why Plaintiffs did not sue Defendants' competitors before suing Defendants.

Defendants admit that "[i]t is true, as UNIVERSAL asserts, that it was not

PRINTED ON RECYCLED PAPER
LA 12143071v1
JMBM Jeffer Mangels Butler & Mitchell LLP

obligated to treat every player in space the same and it could have singled out certain CSPs (or their airline customers) for special treatment." Opp. at 3. This is the beginning and end of the sole issue presented on this motion. *See also Capitol Records, Inc. v. Naxos of America, Inc.*, 372 F.3d 471, 484 (2d Cir. 2004) ("failure to pursue third-party infringers has regularly been rejected as a defense to copyright infringement or as an indication of abandonment"), an appellate decision squarely on point which Defendants do not even address in their Opposition. Defendants' attempted justifications for this third-party discovery are merely the same recycled and discredited argument they admit is legally meritless, gussied up in thin rhetorical disguises. For example, Defendants argue that while Plaintiffs' actions toward third parties may not be relevant, their "intent" as evidenced by those very same actions could be. This is a meaningless distinction without a difference. It is like justifying an investigation into how many speeding motorists a police officer didn't ticket not because those omissions would exonerate the defendant speeder, but because they would reflect the officer's "intent," which could in some different and indirect way exonerate the defendant speeder. That is just doubletalk. If a copyright holder's conduct toward third parties is not a defense to infringement, then it is not a defense – period.

Moreover, Defendants do not even try to rebut or explain away the indisputable emails from Isherwood to them in which he repeatedly told them they ***needed licenses*** from Plaintiffs and ***didn't have them***. Motion at 2-4. Nor do they even claim they ***knew*** anything about Plaintiffs' actions (or inactions) toward third parties at the time of those actions, or until discovery in this lawsuit. Even if there were, evidence "that Defendants heard from third parties that no one had complained about [the third parties'] arguable infringing productions does not in any way estop Plaintiffs from enforcing their rights against ***Defendants***." *Paramount Pictures Corp. v. Carol Pub. Group*, 11 F. Supp. 2d 329, 337 (S.D.N.Y. 1998) (emphasis added). But here, Defendants' proffer does not even approach this inadequate threshold.

PRINTED ON RECYCLED PAPER
LA 12143071v1
JMBM Jeffer Mangels Butler & Mitchell LLP

The discovery order at issue is premised on a legally erroneous theory, and this is reason enough to vacate it; no purpose would be served by delaying such a determination.

## II. THE LEGAL STANDARD

Defendants' erroneous recitation of the legal standard turns it on its head. As Defendants acknowledge, while *factual* discovery rulings are generally subject to a "clearly erroneous" standard, a Magistrate Judge's ruling is not entitled to the same deference where, as here, "it is based on 'an erroneous conclusion of law.'" *Equal Employment Opportunity Commission v. Peters' Bakery*, 301 F.R.D. 482, 485 (N.D. Cal. 2014). Here, Plaintiffs do not object to any factual basis for the ruling (indeed, there *were* no findings of fact). Plaintiffs' objections are based solely on the legal conclusion on which the ruling is based, *i.e.*, the viability of Defendants' legal arguments underpinning the requests at issue. *U.S. v. Mancia*, 720 F. Supp. 2d 1173, 1178 (E.D. Cal. 2010) ("A district court reviews a magistrate's … legal conclusions *de novo*. Mixed questions of law and fact are subject to de novo review") (internal citation omitted).

Defendants' separate argument that Plaintiffs' motion is somehow improper because it raises arguments already presented to the Magistrate Judge (Opp. at 4) is incorrect and unsupported. In *Rosado-Gonzalez v. Alejandro Otero Lopez Hosp.*, 836 F.Supp.2d 48 (D.P.R. 2011), the objections were "quite literally, a carbon copy of the motion presented" to the magistrate judge and did not identify specific portions of the magistrate's order to which objections were made and the basis for those objections. *Id.* at 51. Plaintiffs' motion is nothing like this. The second case Defendants cite, *Lozada-Rivera v. U.S.*, 195 F. Supp. 2d 365 (D. P.R. 2002), does not even address the standard or procedure for an objection to a magistrate judge's ruling.

## III. THE DISCOVERY SOUGHT IN THE REQUESTS IS LEGALLY IRRELEVANT AND THE ORDER SHOULD BE VACATED.

### A. Defendants Concede the Applicable and Dispositive Legal Principles.

Defendants concede the validity of the legal principles cited by Plaintiffs: *e.g.*, that selective enforcement is not a defense to copyright infringement; a copyright owner (unlike, say, a trademark holder) has no obligation to police its copyrights as a condition of legal protection, and can sue infringers in any order, or refrain from suing any infringer, without diminishing its rights against other alleged infringers such as Defendants. *See* Opp. at 3 ("It is true, as UNIVERSAL asserts, that it was not obligated to treat every player in space the same and it could have singled out certain CSPs (or their airline customers) for special treatment."). Defendants' only quibbles with these legal principles are minor and misleading:

● They say that *Petrella v. Metro-Goldwyn-Mayer, Inc.*, – U.S. –, 134 S. Ct. 1962 (2014), affirmed the potential applicability of estoppel to copyright claims. No doubt, but *Petrella* said nothing about (and had nothing to do with) the relevance of the copyright owner's treatment of third parties.

● They rely in conclusory fashion on *National Business Lists, Inc. v. Dun & Bradstreet, Inc.*, 552 F. Supp. 2d 89 (N.D. Ill. 1982), and *Lopez v. Electrical Rebuilders, Inc.*, 416 F. Supp. 1133 (C.D. Cal. 1976), without addressing the facts or posture of the cases as described in Plaintiffs' Motion. Both cases are off point and based on outdated and discredited law for all of the reasons set forth in Plaintiffs' Motion at 14-16, which Plaintiffs incorporate by this reference and will not repeat here. Defendants' claim that *Paramount*, *supra*, implicitly recognized that conduct toward third parties could be legally relevant is equally incorrect. This is simply not true. The *Paramount* court did not state its approval or agreement with *National Business Lists* in any way. Moreover, the *Paramount* court could not have been clearer that it viewed conduct toward third parties as entirely irrelevant, calling the

defendant's contrary argument "unsupported by law" and "pernicious." 11 F. Supp. 2d at 337 ("Extending the doctrine of estoppel so that a defendant may rely on *a plaintiff's conduct toward another party* is both unsupported by law and pernicious as a matter of policy" (emphasis added). Accepting Defendants' view – that the *Paramount* court implicitly would have found such evidence admissible if it was coupled with evidence of conduct toward the defendant – would contravene the court's "refus[al] to recognize a doctrine of estoppel by transitivity" and cannot be reconciled with its concern that "[a]llowing such a defense would compel courts to examine all the other allegedly infringing works on which defendant's reliance was based in order to ascertain whether these works were in fact infringing, thereby creating a number of smaller infringement hearings within a single copyright action." *Id.*

### B. Defendants Cannot Materially Distinguish Their Theory from the Discredited "Estoppel By Transitivity" and Related Theories

The main thrust of Defendants' argument is an attempt to distinguish their theory from the ones in cases like *Paramount* and *Capitol Records*, *supra* (a case they do not even mention in their brief). Their convoluted theory proves too much. Similar arguments could be made in *any* case to justify the wide-ranging discovery they are engaged in here. The gist of their arguments seems to be that various types of irrelevant evidence can be coagulated into relevant evidence if the proponent is clever enough. Dubious as that proposition may be as a general matter, it certainly collapses upon close inspection in this instance.

Defendants assert that their defenses of estoppel and waiver/abandonment "are based in large part on [their] history of direct communications with" Plaintiffs and its alleged agent. Opp. at 7; *see also* Opp. at 11 (complaining that Plaintiffs' motion

"fails to mention [Plaintiffs'] own conduct directed toward" Defendants).[1] But the discovery at issue on this motion has nothing to do with those direct communications (which actually were with Defendants' agent Isherwood, not Defendants themselves), and discovery as to those communications has not been foreclosed or limited at all.

Defendants then assert that the discovery they seek about third parties is necessary "to demonstrate that [Plaintiffs] either did not intend to treat [Defendants] differently or, if [Plaintiffs] did, then [they] misled [Defendants] into believing otherwise." Opp. at 8. How this is any different from using the discovery to show that Plaintiffs treated them differently from other alleged infringers (which they concede Plaintiffs are entitled to do) is never persuasively explained, and Defendants' attempt to do so is just empty rhetorical gymnastics. If Plaintiffs are entitled to treat each infringer differently without risking a finding of estoppel or abandonment – as the law is clear, and Defendants agree, they are – then evidence that they "intended" to treat each infringer differently, or the same, is just as irrelevant. Defendants cannot simultaneously concede that Plaintiffs may treat all infringers differently and then claim that "it is important to understand how UNIVERSAL was dealing with the handful of other airline CSPs (and their airline customers) that comprise the industry" (Opp. at 2).

Defendants say this discovery will show that Plaintiffs "had no intent to pursue claims against [Defendants] from 2009 to late 2013" (Opp. at 4). While the relationship between this third-party discovery and Plaintiffs' intent toward Defendants remains unexplained and speculative, an even more fundamental point is that, even if this assertion about Plaintiffs' intent were true, this would be entirely

---

[1] To be clear, Plaintiffs dispute Defendants' claim that Plaintiffs "made numerous statements" to Defendants about their entitlement to use Plaintiffs' music (Opp. at 14). To put it mildly, Isherwood's actual deposition testimony flatly contradicts this assertion, as does his own private communications to Defendants subsequent to the meetings. But that is beside the point for purposes of this motion.

- 6 -  RNotice of Motion and Motion for Review of Nondispositive Ruling of Magistrate Judge

permissible.  As the Supreme Court just put it in *Petrella*, there is "nothing untoward about waiting to see whether an infringer's exploitation undercuts the value of the copyrighted work…. Even if an infringement is harmful, the harm may be too small to justify the cost of litigation." So the Copyright Act "allows a copyright owner to defer suit until she can estimate whether litigation is worth the candle." 134 S. Ct. at 1976.[2]

Only where Plaintiffs *misled Defendants* – the second half of Defendants' two-pronged rationale for how this third-party discovery relates to estoppel and waiver/abandonment (Opp. at 4) – could Plaintiffs' actions be relevant to an estoppel defense.  *Petrella*, 134 S. Ct. at 1977.  But this would necessarily be based on Plaintiffs' conduct toward *Defendants*, not toward *third parties*.  And even in their Opposition, Defendants do not claim *they* were aware of how Plaintiffs treated third parties – and even if there were such evidence, Defendants would not need *discovery* (particularly *this* discovery) to obtain it.  They could and would just produce it themselves.

The same illogic as Defendants employ would have compelled the opposite result in *Paramount*, as the defendant certainly was arguing that Paramount's failure to sue other infringers in the same industry was relevant evidence that Paramount did not "intend" to treat the defendant differently, and thereby was estopped from doing so.  But the ruling of the *Paramount* court was exactly the opposite.

### C. Defendants Do Not Establish Any Logical Relationship Between Their Theory and The Discovery at Issue

Absent from Defendants' brief is any explanation for how documents about the negotiation of licenses with Spafax and DMX, and the performance of the parties pursuant to such licensing relationships, would be likely to shed light on how

---

[2] It is also not true that discovery to date has supported Defendants' theory – a claim for which they provide no supporting evidence whatsoever.

Plaintiffs treated wholly unlicensed actors like Defendants. *See* Opp. at 12 (Plaintiffs "issued a license to … DMX, which later spun off its inflight audio business and sold it to Spafax, which then became [Plaintiffs'] sole licensee"). Documents evidencing alleged infringing uses of Plaintiffs' music for inflight entertainment have already been produced pursuant to earlier, separate document requests.

Further, Defendants' long, detailed recitation of various ways that the discovery now at issue might unearth relevant evidence is wholly speculative. They repeatedly state that this discovery "may reflect" various things, but never provide any independent evidence (such as someone's deposition testimony) that would render these claims anything but fanciful. At bottom, Defendants' conjectural rationales repeatedly expose their underlying theme that however Plaintiffs treated Spafax, DMX, or other third parties is how they were required to treat Defendants. That is simply not the law. Again, perhaps evidence that Defendants *knew* certain facts, and that knowledge guided their otherwise infringing behavior, might conceivably be probative of what they subjectively believed when they were using Plaintiffs' music without licenses.[3] But that is not what this discovery concerns. It concerns documents and information that, by definition, are still *unknown* to Defendants, and thus could not have guided or even subjectively justified their behavior.[4] (And, as pointed out in Plaintiffs' moving papers, the undisputed evidence

---

[3] However, this would not suffice to show justifiable or reasonable reliance, as required to prove estoppel. *Paramount*, 11 F. Supp. 2d at 337; *Hampton v. Paramount Pictures Corp.*, 279 F.2d 100, 104-05 (9th Cir. 1960) (estoppel cannot be based on "unwarranted reliance on the assertion of a third party").

[4] Defendants' claim that a witness, Bill Waddell, "inferred" that no deal was made with Defendants because of the absence of a deal memorandum, is nonsense. Waddell was the person who initially met with Isherwood and he testified there was no deal. *See e.g.*, Waddell Deposition 177:1-178:10. [Supplemental Declaration of Talya Goldfinger, Ex. 1]. He had personal knowledge and did not need to "infer" anything.

here is that regardless of what Defendants claim Plaintiffs told Isherwood, Isherwood told *Defendants* they *did* need licenses from Plaintiffs, and that he had not obtained them. Defendants were obviously not misled.)

### D. The Discovery at Issue Was Not Based on, and is Not Justified by, Defendants' Statute of Limitations Defense.

Because there is no legal basis for the requested discovery to support Defendants' estoppel or waiver/abandonment defenses, Defendants alternatively assert that the discovery could relate to their statute of limitations defense. This makeweight contention was not the basis for the Magistrate Judge's ruling, and is both legally and factually infirm. Defendants blithely assert that "of course, evidence of a plaintiff's knowledge of an industrywide unlicensed exploitation of its works (especially when coupled with knowledge of the defendant's alleged use) is relevant to when the plaintiff knew or should have known about its infringement claims for purposes of the statute of limitations" (Opp. at 9), but the only two cases they cite for this dubious proposition do not remotely support it; neither had *anything* to do with "industrywide" uses, or uses by anyone other than the defendants in those cases.[5]

---

Thus, Defendants' claim that they need to see deal memoranda for *other* deals with *third parties* to potentially impeach Waddell is meritless.

[5] *Fahmy v. Jay-Z*, 835 F. Supp. 2d 783 (C.D. Cal. 2011), did not even involve different works owned by the same plaintiff, but "various iterations of" the same work that "embodied the exact same [allegedly] infringing melody" from the plaintiff's work. *Id.* at 789. The statement in *Fahmy* that the defendant's infringement of one work put the plaintiff "on constructive notice that there may be more infringing works on the market (especially produced by the same alleged infringer)" is pure *dicta* when applied to industry-wide infringements, cites no authority for such a proposition, and would completely eviscerate the discovery rule because it would put copyright owners such as plaintiffs on constructive notice of every infringement in the world, since they know about some other infringements. *In re Napster Copyright Litigation*, 2005 WL 289977 (N.D. Cal. 2005), also had nothing to do with any infringements other than those by the defendant. And nowhere did the

Moreover, even if this were the law (which it is not), documents reflecting that Plaintiffs knew or should have known of *Defendants'* infringements and did not take action would already have been produced pursuant to Defendants' other, prior document requests for all documents concerning *Defendants* and their uses of Plaintiffs' music in inflight audio entertainment. *See* Goldfinger Decl., Ex. Q, at 7. Plaintiffs conducted a reasonably diligent search for such documents and produced them, if any. *Id*. at 9, 10. Defendants made a motion in April challenging the sufficiency of Plaintiffs' compliance with such requests, Docket No. 164, which was denied except for an order that Plaintiffs search documents of two additional custodians. Docket No. 197. There is no reason to believe that the present Order, which solely concerns third parties and was not predicated on any relevance to a statute of limitations defense, would provide any additional documents about *Defendants*, or even about unlicensed uses by others (since both DMX and Spafax *were* licensed).

## IV. CONCLUSION

For all of the foregoing reasons, the Court should vacate the Order.

DATED: July 27, 2015

JEFFREY D. GOLDMAN
BRIAN YATES
TALYA GOLDFINGER
JEFFER MANGELS BUTLER & MITCHELL LLP

By: */s/ Jeffrey D. Goldman*
    Jeffrey D. Goldman
Attorneys for Plaintiffs and Certain Counter-Defendants

---

Court impute knowledge of infringement of one work based on knowledge of infringement of another work.