JEFFREY D. GOLDMAN (Bar No. 155589)
RYAN MAUCK (Bar No. 223173)
TALYA GOLDFINGER (Bar No. 294926)
JEFFER MANGELS BUTLER & MITCHELL LLP
1900 Avenue of the Stars, Seventh Floor
Los Angeles, California  90067-4308
Telephone:   (310) 203-8080
Facsimile:   (310) 203-0567

Attorneys for Plaintiffs and Counter-Defendants

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UMG RECORDINGS, INC. a Delaware corporation; CAPITOL RECORDS, LLC, a Delaware limited liability company; UNIVERSAL MUSIC CORP., a Delaware corporation; SONGS OF UNIVERSAL, INC., a California corporation; UNIVERSAL – POLYGRAM INTERNATIONAL PUBLISHING, INC. a Delaware corporation; UNIVERSAL – SONGS OF POLYGRAM INTERNATIONAL, INC., a Delaware corporation; UNIVERSAL – POLYGRAM INTERNATIONAL TUNES, INC., a Delaware corporation; UNIVERSAL MUSIC – MGB NA LLC, a California limited liability company; UNIVERSAL MUSIC – Z TUNES LLC, a New York limited liability company; and RONDOR MUSIC INTERNATIONAL, INC., a California corporation, <br><br>     PLAINTIFFS, <br><br>   v. <br><br> GLOBAL EAGLE ENTERTAINMENT INC. a Delaware corporation, for itself and d/b/a INFLIGHT PRODUCTIONS, INFLIGHT ENTERTAINMENT ALLIANCE and IFP; INFLIGHT PRODUCTIONS USA INC./AAEC INC., a California corporation, for itself and d/b/a INFLIGHT PRODUCTIONS, INFLIGHT ENTERTAINMENT | CASE NO. 2:14-cv-03466-MMM (JPR) <br><br> *Assigned to Hon. Margaret M. Morrow* <br><br> **OPPOSITION OF PLAINTIFFS AND COUNTERDEFENDANTS TO MOTION FOR LEAVE TO AMEND COUNTERCLAIMS** <br><br> Date:   November 2, 2015 <br> Time:   10:00 a.m. <br> Ctrm:   780 <br><br> Complaint filed:  May 5, 2014 <br> FAC filed:   February 23, 2015 <br> Discovery cutoff: October 30, 2015 <br> Pretrial Conference: February 8, 2016 <br> Trial:    March 1, 2016 |

JMBM | Jeffer Mangels Butler & Mitchell LLP

1  ALLIANCE and IFP; INFLIGHT
   PRODUCTIONS LTD., an entity of
2  unknown form; AMERICAN
   AIRLINES, INC., a Delaware
3  corporation; and DOES 1 – 20, inclusive,

4                DEFENDANTS.

5
6  GLOBAL EAGLE ENTERTAINMENT
   INC. a Delaware Company, INFLIGHT
7  PRODUCTIONS USA INC., a
   California corporation, and INFLIGHT
   PRODUCTIONS LTD., a United
8  Kingdom limited company,

9              Counter-Claimants,

10       v.

11 UMG RECORDINGS, INC. a Delaware
   corporation; CAPITOL RECORDS,
12 LLC, a Delaware limited liability
   company; UNIVERSAL MUSIC
13 CORP., a Delaware corporation; SONGS
   OF UNIVERSAL, INC., a California
14 corporation; UNIVERSAL –
   POLYGRAM INTERNATIONAL
15 PUBLISHING, INC. a Delaware
   corporation; UNIVERSAL –
16 POLYGRAM INTERNATIONAL
   TUNES, INC., a Delaware corporation;
17 UNIVERSAL MUSIC – MGB NA LLC,
   a California limited liability company;
18 UNIVERSAL MUSIC – Z TUNES LLC,
   a New York limited liability company;
19 RONDOR MUSIC INTERNATIONAL,
   INC., a California corporation;
20 UNIVERSAL MUSICA, INC., a Florida
   Corporation; and UNIVERSAL MUSIC
21 GROUP INTERNATIONAL LTD., an
   unknown entity, and ROES 1-10,
22 inclusive,

23             Counter-Defendants.

24
25
26
27
28

PRINTED ON
RECYCLED PAPER
LA 12312525v4

JMBM | Jeffer Mangels
       Butler & Mitchell LLP

                                    -ii-        Opposition to Motion for Leave to Amend
                                                Counterclaims

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JMBM | Jeffer Mangels Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 12312525v4

## TABLE OF CONTENTS

Page

I. PRELIMINARY STATEMENT..................................................................... 1

II. PROCEDURAL HISTORY ......................................................................... 2

III. NO GOOD CAUSE EXISTS TO AMEND THE SCHEDULING ORDER ......... 4

IV. EVEN IF GOOD CAUSE EXISTED TO AMEND THE SCHEDULING
    ORDER, THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED . 10

V. CONCLUSION.............................................................................................. 14

Opposition to Motion for Leave to Amend
Counterclaims

TABLE OF AUTHORITIES

Page

**CASES**

*Acri v. International Ass'n of Machinists & Aerospace Workers,*
  781 F.2d 1393 (9th Cir. 1986).........................................................................10, 13

*Barnes v. Yahoo!, Inc.,*
  570 F.3d 1096 (9th Cir. 2009).................................................................................14

*C&K Engineering Contractors v. Amber Steel Co.,*
  23 Cal. 3d 1 (1978) .................................................................................................14

*Celador Int'l Ltd. v. Walt Disney Co.,*
  347 F. Supp. 2d 846 (C.D. Cal. 2004) ....................................................................14

*Derderian v. Sw. & Pac. Specialty Fin., Inc.,*
  No. 14-CV-412-L KSC, 2014 WL 6980525
  (S.D. Cal. Dec. 8, 2014)..............................................................................12, 13, 14

*Enterprise Management Ltd., Inc. v. Warrick,*
  No. 10–cv–00660–JLK–KMT, 2012 WL 1110081
  (D. Colo. Apr. 3, 2012) ........................................................................................7, 9

*Fibre Corp. v. GSO America, Inc.,*
  No. CIVA5:04CV170DCB-JMR, 2006 WL 522379
  (S.D. Miss. Mar. 1, 2006) .........................................................................................7

*Grant v. Aurora Loan Services, Inc.,*
  736 F. Supp. 2d 1257 (C.D. Cal. 2010) (Morrow, J.) .............................................7

*In re Allstate Life Ins. Co. Litigation,*
  Nos. CV–09–8162–PCT–GMS, 2012 WL 177824 (D. Ariz. January
  23, 2012)....................................................................................................................6

*In re Cathode Ray Tube (CRT) Antitrust Litigation,*
  No. C–07–5944–SC, 2014 WL 4954634 (N.D. Cal. Oct. 1, 2014).........................7

*In re Western States Wholesale Nat. Gas Antitrust Litig.,*
  715 F.3d 716 (9th Cir. 2013).....................................................................................5

*Jackson v. Bank of Hawaii,*
  902 F.2d 1385 (9th Cir. 1990).................................................................................10

Opposition to Motion for Leave to Amend
Counterclaims

PRINTED ON
RECYCLED PAPER
LA 12312525v4

*Jacobson v. Persolve, LLC*,
No. 14-CV-00735-LHK, 2015 WL 2061712 (N.D. Cal. May 1, 2015) ................5

*Jensen v. Quality Loan Service Corp.*,
702 F. Supp. 2d 1183 (E.D. Cal. 2010) ...............................................................14

*Johnson v. Mammoth Recreations, Inc.*,
975 F.2d 604 (9th Cir. 1992).....................................................................passim

*Kelly v. Applera Corp.*,
No. C-07-3002 MMC, 2008 WL 901670 (N.D. Cal. Mar. 31, 2008)...................11

*Krumme v. WestPoint Stevens Inc.*,
143 F.3d 71 (2d Cir.1998).................................................................................11

*Lewis v. Russell*,
No. CIV. 2:03-2646 WBS, 2012 WL 4711959
(E.D. Cal. Oct. 3, 2012) ...............................................................................5, 7

*Lockheed Martin Corp. v. Network Solutions, Inc.*,
194 F.3d 980 (9th Cir. 1999).......................................................................10, 11

*Macias v. City of Clovis*,
No. 1:13–CV–01819–BAM, 2015 WL 3937640
(E.D. Cal. June 26, 2015)..................................................................................6

*Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*,
218 F.R.D. 667 (C.D. Cal. 2003 ) (Morrow, J.)....................................................4

*McClellan v. Kern Cnty. Sheriff's Office*,
No. 1:10-CV-0386-LJO-MJS, 2015 WL 4368454
(E.D. Cal. July 14, 2015)
.................................................................................................12, 13, 14

*Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*,
No. 11–cv–2861–SC, 2012 WL 6095089 (N.D. Cal. Dec. 7, 2012) ......................6

*Muench Photography, Inc. v. Pearson Educ., Inc.*,
No. 12-CV-01927-WHO, 2013 WL 4426493
(N.D. Cal. Aug. 15, 2013)..................................................................................11

*NetMoney, Inc. v. VeriSign*,
No. CV01-441-TUC-RCC, 2006 WL 6130996 (D. Ariz. June 8,
2006), *aff'd*, 545 F.3d 1359 (Fed. Cir. 2008) .....................................................11

PRINTED ON
RECYCLED PAPER
LA 12312525v4

-iii-                    Opposition to Motion for Leave to Amend
                         Counterclaims

*Oneida Indian Nation of New York State v. County of Oneida, N.Y.*,
   199 F.R.D. 61 (N.D.N.Y. 2000)..........................................................................13

*Pullano v. NaphCare*,
   No. 2:10–cv–00335–JAD–VCF, 2014 WL 4704587
   (D. Nev. Sept. 23, 2014) ................................................................................10

*Rooney v. Sierra Pac. Windows*,
   No. 10-CV-00905-LHK, 2011 WL 5034675
   (N.D. Cal. Oct. 11, 2011) *aff'd,* 566 F. App'x 573 (9th Cir. 2014).........................6

*Rosales v. FitFlop USA, LLC*,
   No. 11-CV-0973 W KSC, 2013 WL 3049122
   (S.D. Cal. June 17, 2013).................................................................................5

*Solomon v. North Am. Life & Cas. Ins. Co.*,
   151 F.3d 1132 (9th Cir. 1998)..........................................................................11

*Squires, ex rel. Squires v. Goodwin*,
   No. 10–cv–00309–CBS, 2012 WL 37508 (D. Colo. Jan. 9, 2012) ........................7

*State Trading v. Assuranceforeningen Skuld*,
   921 F.2d 409 (2d Cir. 1990)..............................................................................13

*Tinker v. Aurora Loan Services*,
   No. 2:11–cv–00642–KJM–EFB, 2015 WL 1540579
   (E. D. Cal. Apr. 7, 2015).......................................................................5, 10, 11

*Transamerica Life Insurance Co. v. Lincoln National Life Insurance Co.*,
   590 F. Supp. 2d 1093 (N.D. Iowa 2008) .............................................................7

*U.S. Ecology, Inc. v. California*,
   129 Cal. App. 4th 887 (2005)............................................................................6

*UMG Recordings, Inc. v. Global Eagle Entertainment, Inc.*,
   – F. Supp. 3d –, 2015 WL 4606077 (C.D. Cal. 2015) ...........................................6

*Whitsitt v. County of San Mateo*,
   No. C 10-04996 LB, 2012 WL 174859 (N.D. Cal. Jan. 20, 2012)........................11

JMBM | Jeffer Mangels
Butler & Mitchell LLP

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

PRINTED ON

RECYCLED PAPER
LA 12312525v4

Opposition to Motion for Leave to Amend
Counterclaims

1

**STATUTES**

2

Fed. R. Civ. P. 15(a) ................................................................... 4, 9, 10, 12

3

Fed. R. Civ. P 16(b) ............................................................ 2, 4, 5, 7, 9, 10

4

5

Local Rule 7-3 ...................................................................................4

6

Rule 12(b)(6) .............................................................................. 12, 13

7

**OTHER AUTHORITIES**

8

6 C. Wright & A. Miller, *Federal Practice and Procedure*
    § 1488 at 443–44 (1971) .........................................................12

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON

RECYCLED PAPER
LA 12312525v4

-v-      Opposition to Motion for Leave to Amend
Counterclaims

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.**

**PRELIMINARY STATEMENT**

Defendants' Motion for Leave to Amend (the "Motion") takes their efforts to delay and complicate this case to new lows. Defendants offer no justification for their delay in raising these new legal theories, which they admit are based on facts they have known all along and which are essentially the very theories they previously considered, rejected, and disavowed. That is all this Court should need to conclude that Defendants have not acted with the required "diligence" under Fed. R. Civ. P 16(b)(4).

Recall that in their original Counterclaims, Defendants *seemed* to be asserting a claim for breach of contract. However, in their Opposition to Plaintiffs' original Motion to Dismiss, Defendants specifically disavowed asserting such a claim. Dkt. 229, at 7-8 ("[T]his case is *not about whether Universal and IFP agreed on all materials terms of a license* [but is] about whether Universal made sufficient misrepresentations or false promises to entitle IFP to rely upon them, as it did.") (emphasis added). Defendants again denied asserting such claims at the hearing on the original Motion to Dismiss. Declaration of Jeffrey D. Goldman ("Goldman Decl."), Ex. A, at 5:20-21 ("*there is no claim here for breach of oral agreement* or breach of written agreement") (emphasis added). Defendants insisted that "we chose not to plead breach of oral agreement … we didn't sue for breach of oral agreement." *Id*. at 6:12-13, 7:2-3. Similarly, with regard to the promissory estoppel claim, Defendants previously appeared to assert a similar claim of promissory fraud, arguing in their Opposition to Plaintiffs' original Motion to Dismiss that they had "*more than adequately plead* [*sic*] *a claim for promissory fraud*" [Dkt. 229, at 2-3 (emphasis added)] – but then abruptly reversed course at the hearing, stating, "let me just say this, which is, *there is no claim for promissory fraud pled here*. There's claims for

-1-   Opposition to Motion for Leave to Amend
Counterclaims

misrepresentation and concealment but *not promissory fraud*."  Goldman Decl., Ex. A, at 5:17-20 (emphasis added).

Now, though, more than six months after they should originally have been pled if they had any merit, these claims are back – breach of oral agreement, and promissory fraud under the barely different guise of promissory estoppel (which, like promissory fraud, Defendants say will enable them "to *recover the damages [they] suffered in reliance on [Plaintiffs'] communications and other conduct*").  Dkt. 345, at 3 (emphasis added).  Meanwhile, they admit that their "proposed additional claims are based on the *exact same set of facts* as IFP's affirmative defense of estoppel and its affirmative claims for misrepresentation and concealment."  *Id*. at 1 (emphasis added).

Defendants' Motion should be denied.  They have not met their burden to show good cause under Fed. R. Civ. P. 16(b)(4), and even if they had, the factors governing amendment under Fed. R. Civ. P. 15(a) militate against the amendment.  Beyond that, Defendants did not even comply with Local Rule 7-3 before filing their Motion.[1]  Simply, nothing about their Motion demonstrates any diligence or provides any justification for the late amendment they seek.

## II.
## <u>PROCEDURAL HISTORY</u>

The procedural history leading to the present motion reinforces the conclusion that Defendants have not shown good cause to amend the scheduling order, and, so, "the inquiry should end."  *Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 609 (9th Cir. 1992).

---

[1] Defendants *never* met and conferred with Plaintiffs over this proposed amendment, much less complied with the requirement to "discuss thoroughly, preferably in person, the substance of the contemplated motion and any potential resolution."  *See* Goldman Decl. ¶ 3.

The deadline to amend pleadings in this action expired on November 10, 2014. Dkt. 29. Defendants did not assert their original Counterclaims until March 10, 2015. Dkt. 118. While this was permissible (it was 15 days after this Court denied Defendants' motion to dismiss certain state law claims), nothing forced Defendants to delay asserting their Counterclaims until then.

Plaintiffs moved to dismiss Defendants' original Counterclaims on April 3. Defendants argued their Counterclaims were sufficient (the Court found otherwise) and, alternatively, sought a broad and unrestricted order allowing them to amend them based on the "rich discovery record."  Dkt. 229, at 4:2, 4:9. (Discovery effectively closed on July 10, 2015 [Dkt. 219, at 1], after nearly a year – the Court has twice extended that deadline solely to permit the completion of existing discovery. Dkt. 300, at 1-2; Dkt. 340, at 2.) When they initially requested leave to amend, Defendants did *not* ask to add new legal theories or new claims, despite the "rich discovery record." On June 22, 2015, the Court granted Plaintiffs' motion to dismiss Defendants' original Counterclaims, and granted Defendants' request for leave only in part, expressly prohibiting Defendants from pleading "additional claims or add[ing] allegations that are not intended to cure the specific defects the Court has noted" in the Order. Dkt. 279, at 31.

On July 13, 2015, Defendants filed Amended Counterclaims. Dkt. 305. At that time, Defendants could have simultaneously filed a Motion for Leave to Amend to add new legal theories or claims, or facts unrelated to the specific defects noted by the Court. They again chose not to do so.

On July 27, Plaintiffs moved to dismiss the Amended Counterclaims. Dkt. 314. On August 27, 2015, at a telephonic status conference with this Court, Defendants orally requested leave to file Second Amended Counterclaims in lieu of opposing Plaintiffs' motion to dismiss. The Court denied the request and told Defendants that if they wanted to file Second Amended Counterclaims, they would need to file a Motion for Leave to Amend and show good cause. The Court also

Opposition to Motion for Leave to Amend Counterclaims

PRINTED ON
RECYCLED PAPER
LA 12312525v4

expressed concern that such a motion would further delay this case, which is already on its 4th trial date. The Court's directive was unmistakable – act diligently and promptly. Again, Defendants could have promptly filed a Motion for Leave to Amend, but again they chose not to.

One month and three days later, Defendants *finally* filed this Motion for Leave to Amend. Defendants offer no plausible explanation for their delay. They concede the Motion is not based on any new discovery or facts which have only recently come to light. Instead, they assert that after a year and a half of litigation, they suddenly thought of new legal theories that they failed to include in the first two iterations of their Counterclaims. Speciously, they seek to justify this delay by suggesting that it is based on Plaintiffs somehow alluding to new or different facts – facts that either would have already been part of the "rich discovery record" when Defendants filed their prior and current counterclaims, or are a figment of Defendants' imaginations. Defendants' attempted justification is the definition of "makeweight." Moreover, at least one of Defendants' proposed new Counterclaims – breach of oral contract – is a legal theory they have previously disavowed in open court as of doubtful validity; a second – promissory estoppel – is extremely similar to other claims they have already tried to allege twice (promissory fraud, negligent misrepresentation); and the third – declaratory relief – is superfluous and duplicative.

## III.

## NO GOOD CAUSE EXISTS TO AMEND THE SCHEDULING ORDER

Defendants concede their Motion requires, as a threshold matter, that the Court's Scheduling Order be amended and that they are required to show "good cause" for the Court to do so. Motion at 11; *see* Fed. R. Civ. P. 16(b)(4). This requires that Defendants demonstrate that the pretrial schedule "cannot reasonably be met despite [their] diligence[.]" Fed. R. Civ. P. 16, Advisory Committee's Notes (1983 amendment). In the Ninth Circuit, if a party cannot show diligence, "the inquiry should end." *Johnson*, 975 F.2d at 609 ("the focus of the inquiry is upon the

PRINTED ON

RECYCLED PAPER
LA 12312525v4

-4-    Opposition to Motion for Leave to Amend Counterclaims

moving party's reasons for seeking modification," though "the existence or degree of prejudice to the party opposing the modification might supply additional reasons to deny a motion"); *accord*, *Matrix Motor Co., Inc. v. Toyota Jidosha Kabushiki Kaisha*, 218 F.R.D. 667, 671 (C.D. Cal. 2003 ) (Morrow,  J.).

Defendants have been the opposite of diligent.  This Court made clear in its Order dismissing the original Counterclaims and again at the August 27 telephonic status conference its skepticism about any further amendments, especially those not confined to the specific defects found by the Court in dismissing the original Counterclaims, and Defendants had every reason to understand that any request to go beyond the Court's permitted boundaries would require prompt action.  "Failing to heed clear and repeated signals … does not constitute diligence." *Johnson*, 975 F.2d at 609 (district court properly denied motion to amend scheduling order "made four months after the cut-off date for amendment had expired").

Further, Defendants' repeated admissions that the proposed new claims are based entirely on the "same facts" as their existing claims and affirmative defenses (Motion at 1, 8, 10, 11, and 12) also evidence a lack of diligence.  Being "aware of the facts and theories supporting amendment since the inception of the action" demonstrates a lack of diligence under Rule 16(b)(4).  *In re Western States Wholesale Nat. Gas Antitrust Litig.*, 715 F.3d 716, 737 (9th Cir. 2013); *see also Lewis v. Russell*, No. CIV. 2:03-2646 WBS, 2012 WL 4711959, at *4 (E.D. Cal. Oct. 3, 2012) ("Under Rule 16(b), the failure to point to the discovery of any new facts to support the proposed claim is often fatal.").  For example, in *Tinker v. Aurora Loan Services*, No. 2:11–cv–00642–KJM–EFB, 2015 WL 1540579 (E. D. Cal. Apr. 7, 2015), the court denied leave to amend a scheduling order to allow pleading of new claims where "Plaintiff has had access to the same facts pled in the proposed new complaint since 2011; none of her additional claims is based on newly discovered facts.  Plaintiff's new false representation claims are based on representations made in 2009 and early 2010.  Plaintiff does [sic] explain why these misrepresentations

Opposition to Motion for Leave to Amend
Counterclaims

were undiscoverable until now." *Id.* at *5.  This is precisely the case here as well. And courts find a lack of diligence based on far shorter delays.  *See, e.g., Rosales v. FitFlop USA, LLC*, No. 11-CV-0973 W KSC, 2013 WL 3049122, at *3-4 (S.D. Cal. June 17, 2013) (five-month delay showed lack of diligence justifying denial of motion to amend); *Jacobson v. Persolve, LLC*, No. 14-CV-00735-LHK, 2015 WL 2061712, at *4-5 (N.D. Cal. May 1, 2015) (five-month delay after becoming aware of necessity of amendment, and even three month delay after receiving certain discovery, showed lack of diligence supporting denial of leave of amend); *Rooney v. Sierra Pac. Windows*, No. 10-CV-00905-LHK, 2011 WL 5034675, at *7 (N.D. Cal. Oct. 11, 2011) *aff'd*, 566 F. App'x 573 (9th Cir. 2014) (good cause not shown where Plaintiff waited nearly three months after receiving sufficient information to amend the complaint to file motion for leave to amend).  For example, in *Macias v. City of Clovis*, No. 1:13–CV–01819–BAM, 2015 WL 3937640 (E.D. Cal. June 26, 2015), leave to amend a scheduling order was denied where "Plaintiff has had access to the same facts pled in the proposed new complaint since March 2014, as his additional claim is not based on newly discovered facts."  2015 WL 3937640 at *2; *see also*, *In re Allstate Life Ins. Co. Litigation*, Nos. CV–09–8162–PCT–GMS, 2012 WL 177824, *2 (D. Ariz. January 23, 2012) ("The Underwriters have not demonstrated diligence. They do not claim to have recently discovered facts that were previously unavailable to them, nor do they provide any other reason for why they could not have included the Arizona securities claim in their earlier complaints" and "offer no explanation that suggests that their failure to previously allege a violation of Arizona securities law was consistent with a diligent pursuit of their case."); *Mitsui O.S.K. Lines, Ltd. v. Seamaster Logistics, Inc.*, No. 11–cv–2861–SC, 2012 WL 6095089, at *2-3 (N.D. Cal. Dec. 7, 2012) (finding lack of diligence where, as here, a party waited until the eve of the discovery deadline to seek amendment).[2]

---

[2] Indeed, the elements of promissory estoppel are very similar to the elements of

Opposition to Motion for Leave to Amend Counterclaims

PRINTED ON RECYCLED PAPER
LA 12312525v4

There are no new facts or any other conceivable reason why Defendants could

not have tried to plead claims for promissory estoppel and breach of oral contract

previously, other than (1) carelessness, (2) a tactical decision to eschew any

promised-based claim in order to try to allege meritless misrepresentation-based

claims, or (3) simply changing their mind, nearly a year-and-a-half into this case.

None of these reasons suffices to show diligence under Rule 16(b)(4).  *See Johnson*,

975 F.2d at 609 ("carelessness is not compatible with a finding of diligence and

offers no reason for a grant of relief"); *In re Cathode Ray Tube (CRT) Antitrust

Litigation*, No. C–07–5944–SC, 2014 WL 4954634, *2 (N.D. Cal. Oct. 1, 2014) ("if a

party … waits until the eleventh hour for tactical reasons, or otherwise acts carelessly

or in bad faith, courts are unlikely to vary the applicable schedule"); *Lewis*, 2012 WL

4711959 at *5 ("a tactical decision to delay does not merit good cause") (internal

quotations omitted); *Transamerica Life Insurance Co. v. Lincoln National Life

Insurance Co.*, 590 F. Supp. 2d 1093, 1100-05 (N.D. Iowa 2008) (belated motion for

leave to amend reflected "second guessing" of earlier tactical decisions to forego

negligent misrepresentation that Defendants have already tried to allege twice.
*Compare U.S. Ecology, Inc. v. California*, 129 Cal. App. 4th 887, 901 (2005)
(promissory estoppel lies where "(1) a promise [is] clear and unambiguous in its
terms; (2) [there is] reliance by the party to whom the promise is made; (3) [the]
reliance [is] both reasonable and foreseeable; and (4) the party asserting the estoppel
[was] injured by his reliance") *with UMG Recordings, Inc. v. Global Eagle
Entertainment, Inc.*, – F. Supp. 3d –, 2015 WL 4606077, *11 (C.D. Cal. 2015)
(elements of negligent misrepresentation are "(1) the misrepresentation of a past or
existing material fact, (2) without reasonable ground for believing it to be true, (3)
with intent to induce another's reliance on the fact misrepresented, (4) justifiable
reliance on the misrepresentation, and (5) resulting damage."); *see also Grant v.
Aurora Loan Services, Inc.*, 736 F. Supp. 2d 1257, 1271 (C.D. Cal. 2010) (Morrow,
J.) (discussing similarities between promissory fraud and estoppel); *Fibre Corp. v.
GSO America, Inc.*, No. CIVA5:04CV170DCB-JMR, 2006 WL 522379, *9 n.9 (S.D.
Miss. Mar. 1, 2006) (granting summary judgment on both claims for same reasons;
"There seems to be little difference between a promissory estoppel claim and a
negligent misrepresentation claim inasmuch as both involve detrimental reliance on
the representation.").

Opposition to Motion for Leave to Amend
          Counterclaims

JMBM | Jeffer Mangels
Butler & Mitchell LLP

PRINTED ON
RECYCLED PAPER
LA 12312525v4

1    those claims; plaintiff knew all the circumstances giving rise to the belatedly

2    proposed claim far earlier); *Squires, ex rel. Squires v. Goodwin*, No. 10–cv–00309–

3    CBS, 2012 WL 37508, *6 (D. Colo. Jan. 9, 2012) ("The Federal Rules of Civil

4    Procedure will not necessarily protect a party from the unforeseen consequences of

5    their own litigation strategy."); *Enterprise Management Ltd., Inc. v. Warrick*, No. 10–

6    cv–00660–JLK–KMT, 2012 WL 1110081, *2 (D. Colo. Apr. 3, 2012) ("Whether

7    Plaintiffs' Motion is an attempt to correct an oversight … or [a] tactical decision to

8    [originally] articulate Plaintiffs' claims in terms of copyright rather than tradename

9    infringement, neither fact establishes or excuses the lack of 'diligence' necessary to

10   support the untimely amendment they seek.").

11          Defendants' attempt to justify their delay based on supposed new contentions

12   being made by Plaintiffs is a makeweight excuse that has no substance.  As a

13   threshold mater, what Plaintiffs argue has nothing to do with the facts of which

14   Defendants were long aware and on which basis they chose to formulate their claims.

15   In any event, Plaintiffs argued that Defendants' original Counterclaims were based on

16   alleged false or negligent promises last April 3, in their original Motion to Dismiss

17   the Counterclaims.  Dkt. 142, at 4-6.  Fully cognizant of the facts and Plaintiffs'

18   contention, Defendants responded not by asking to add any new claims but, to the

19   contrary, by *disavowing* any contention that the facts or Plaintiffs' position gave rise

20   to any claims based on false promises or oral contracts.  In their June 1, 2015

21   opposition to Plaintiffs' motion to dismiss the original Counterclaims, Defendants

22   insisted that "this case is *not* about whether Universal and IFP agreed on all material

23   terms of a license" (*i.e.*, an oral agreement) or "about whether Universal made

24   sufficient misrepresentations or false promises to entitle IFP to rely upon them."  Dkt.

25   229, at 7-8.  Then, at the June 22, 2015 hearing on Plaintiffs' motion to dismiss the

26   original Counterclaims, Defendants orally assured the Court that Defendants *were not*

27   asserting such claims:  "Well, let me just say this, which is, *there is no claim for*

28   *promissory fraud pled here*.  There's claims for misrepresentation and concealment

PRINTED ON
RECYCLED PAPER
LA 12312525v4

-8-      Opposition to Motion for Leave to Amend
         Counterclaims

*but not promissory fraud*.  And we did that because *there is no claim here for breach of oral agreement* or breach of written agreement."  Goldman Decl., Ex. A, at 5:17-21 (emphasis added).  When the Court inquired further about the absence of such claims, Defendants made clear that they had both considered them and rejected them:

> Defendants' Counsel: "[T]here are a number of terms that would likely have gotten fleshed out in the paperwork back and forth."
>
> Court: *So it wasn't sufficiently specific to be an oral agreement*?
>
> Defendants' Counsel:  "That's debatable, but *we chose not to plead breach of oral agreement*, which isn't enforceable under the copyright laws anyway … So, you know, was it an agreement to agree? Was it an agreement to send paperwork documenting – you don't need to reach any of those questions because *we didn't sue for breach of oral agreement*.

*Id.*, 6:8-7:3 (emphasis added).  Thus, Defendants can hardly claim that they had not considered these claims before and were "diligent" in trying to assert them, based on no new facts, more than three months after this hearing.[3]  There is no conceivable basis to find the "diligence" and good cause necessary to amend the Scheduling Order, and the Court need go no further.

---

[3] Moreover, Defendants offer no reasonable excuse for their delay in presenting their new declaratory relief claim.  They lamely contend they "thought that [their] liabilities to third parties (and defense costs associated therewith) would have been fixed by the time of trial."  Motion at 13.  Defendants provide no facts, no details, no information at all as to why they may have once thought this, or why this may have changed.  Nor do they explain why the assertion of such a claim is dependent on such unknown and unpredictable timing.

Opposition to Motion for Leave to Amend Counterclaims

PRINTED ON RECYCLED PAPER
LA 12312525v4

## IV.

## EVEN IF GOOD CAUSE EXISTED TO AMEND THE SCHEDULING ORDER, THE MOTION FOR LEAVE TO AMEND SHOULD BE DENIED

Even if there were "good cause" for modifying the Scheduling Order under Rule 16(b)(4) (which there is not), the Court still has discretion to refuse the amendment unless leave to amend is also independently justified under Fed. R. Civ. P. 15(a).  *See Johnson*, 975 F.2d at 607-08 ("A court's evaluation of good cause [under Rule 16] is not coextensive with an inquiry into the propriety of the amendment under ... Rule 15"); *Tinker*, 2015 WL 1540579 at *5 ("Even if plaintiff could show good cause for amendment, Rule 15 weighs against granting leave to amend.").  In the Ninth Circuit, courts are to consider four factors when deciding whether to permit an amendment:  "(1) bad faith on the part of the [movant]; (2) undue delay; (3) prejudice to the opposing party; and (4) futility of the proposed amendment."  *Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999).  Here, the circumstances strongly militate against leave to amend under Rule 15(a), even if the Court were to reach this issue (which it need not).

*First*, just as under Rule 16, delay alone is sufficient to deny leave to amend under Rule 15.  "Relevant to evaluating the delay issue is whether the moving party knew or should have known the facts and theories raised by the amendment in the original pleading." *Jackson v. Bank of Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990). "[L]ate amendments to assert new theories are not reviewed favorably when the facts and the theory have been known to the party seeking amendment since the inception of the cause of action." *Acri v. International Ass'n of Machinists & Aerospace Workers*, 781 F.2d 1393, 1398-99 (9th Cir. 1986).  And "[d]elay is not measured in years:  an eight month delay between the time of obtaining a relevant fact and seeking a leave to amend has been found unreasonable." *Tinker*, 2015 WL 1540579 at *5, *citing AmerisourceBergen Corp. v. Dialysist W., Inc.*, 465 F.3d 946, 953 (9th Cir. 2006).  Here, Defendants concede – even insist – that the facts supporting their new

Opposition to Motion for Leave to Amend Counterclaims

PRINTED ON RECYCLED PAPER LA 12312525v4

claims were available long before this Motion was filed.  *See Tinker*, 2015 WL 1540579 at *5 ("plaintiff has known of the same facts since first filing her case in 2011. Her new allegations are based on the same actions giving rise to plaintiff's current and dismissed causes of action"); *Pullano v. NaphCare*, No. 2:10–cv–00335–JAD–VCF, 2014 WL 4704587, *4 (D. Nev. Sept. 23, 2014) ("the Court will not grant leave to amend if the allegedly new evidence was available or reasonably obtainable with due diligence at an earlier time").  Indeed, the facts that Defendants contend support their new claims (the purported pre-litigation communications and conduct between alleged representatives of Plaintiffs and Defendants) were known to Defendants long before this litigation was even filed.  *See Lockheed Martin*, 194 F.3d at 986 (motion for leave to amend properly denied where the moving party "did not explain the delay, but supported it based on a claim of no prejudice to" defendant).

*Second*, an unexplained delay, such as Defendants' here, justifies a presumption of prejudice.  "[O]ne of the most important considerations in determining whether amendment would be prejudicial is the degree to which it would delay the final disposition of the action."  *Krumme v. WestPoint Stevens Inc.*, 143 F.3d 71, 88 (2d Cir.1998) (internal citations omitted).  Hence, prejudice is "***inherent*** in any significant change in the trial schedule."  *Kelly v. Applera Corp.*, No. C-07-3002 MMC, 2008 WL 901670, *1 (N.D. Cal. Mar. 31, 2008) (emphasis added) (rejecting argument that defendant would not be prejudiced by delay if the discovery and trial dates are allowed to be extended because such argument ignores that changes to trial schedule are inherently prejudicial); *NetMoney, Inc. v. VeriSign*, No. CV01-441-TUC-RCC, 2006 WL 6130996, *6 (D. Ariz. June 8, 2006) ("courts may presume prejudice where a motion to amend is brought late in the litigation"), *aff'd*, 545 F.3d 1359 (Fed. Cir. 2008); *Whitsitt v. County of San Mateo*, No. C 10-04996 LB, 2012 WL 174859, *2 (N.D. Cal. Jan. 20, 2012) ("some courts presume prejudice where a motion to amend is brought late in the litigation").  Even just a six-week delay caused by adding new causes of action establishes prejudice.  *See Muench*

Opposition to Motion for Leave to Amend Counterclaims

PRINTED ON

RECYCLED PAPER
LA 12312525v4

JMBM | Jeffer Mangels Butler & Mitchell LLP

*Photography, Inc. v. Pearson Educ., Inc.*, No. 12-CV-01927-WHO, 2013 WL 4426493, *3 (N.D. Cal. Aug. 15, 2013); *see also Solomon v. North Am. Life & Cas. Ins. Co.*, 151 F.3d 1132, 1139 (9th Cir. 1998) (late amendment is prejudicial because it necessarily will delay trial and cause further expense to opposing party); *Tinker*, 2015 WL 1540579 at *5 ("amendment would prejudice defendant who would have to defend and file an answer to an additional nine claims at this late stage").

The filing of the second amended counterclaims would undeniably require a delay in the pre-trial schedule to allow Plaintiffs to file another motion to dismiss under Rule 12(b)(6).  It would be just as prejudicial if Plaintiffs were forced to forego such a motion and move directly to a more elaborate and expensive summary judgment motion on these new counterclaims (simultaneously with answering them) just to preserve the trial schedule.  It would increase Plaintiffs' expenses, diminish the benefits of the first two motions to dismiss they filed (which would no longer be dispositive), and deprive them of the right to file a motion specifically permitted by the Federal Rules.

*Third*, though the Court need not find Defendants acted in bad faith to deny their motion under Rule 15(a), bad faith may be inferred from the timing of the proposed amendment.  "Unexplained or unwarranted delay can, in itself, be evidence of bad faith sufficient to justify denial of leave to amend." *McClellan v. Kern Cnty. Sheriff's Office*, No. 1:10-CV-0386-LJO-MJS, 2015 WL 4368454, *2 (E.D. Cal. July 14, 2015), *report and recommendation adopted*, No. 1:10-CV-0386-LJO-MJS, 2015 WL 4872641 (E.D. Cal. Aug. 13, 2015); *see also Derderian v. Sw. & Pac. Specialty Fin., Inc.*, No. 14-CV-412-L KSC, 2014 WL 6980525, *9 (S.D. Cal. Dec. 8, 2014) (failure to amend complaint at any time during the six months prior to dispositive motion was "suspect" and supported a finding of bad faith or dilatory motive).  "By failing to introduce the matter contained in the proposed amendment at as early a stage in the litigation as possible, the pleader has demonstrated bad faith in not apprising the opponent of its true position in the action."  6 C. Wright & A. Miller,

1    *Federal Practice and Procedure* § 1488 at 443–44 (1971) (reasoning that a pleader

2    who purposefully delays asserting a claim acts contrary to the spirit of the federal

3    rules and the liberal amendment policy, designed to avoid the "sporting theory of

4    justice" and facilitate decisions on the merits).  The timing of Defendants' Motion

5    seems calculated to gain an unfair tactical advantage by either avoiding dismissal of

6    all of their Counterclaims on the pleadings, or else provoking another trial

7    continuance.  This is classic bad faith.  *E.g., State Trading v. Assuranceforeningen*

8    *Skuld*, 921 F.2d 409, 417-18 (2d Cir. 1990) (affirming denial of motion to amend

9    where plaintiff "deliberately chose not to amend its complaint earlier" for "tactical"

10   reasons, and with no justification waited an "unreasonably long" time to seek leave to

11   amend); *Oneida Indian Nation of New York State v. County of Oneida, N.Y.*, 199

12   F.R.D. 61, 80 (N.D.N.Y. 2000) ("A finding that a party is seeking leave to amend

13   solely to gain a tactical advantage, also supports a finding that such an amendment is

14   made in bad faith."); *Acri v. International Ass'n of Machinists*, 781 F.2d 1393, 1398-

15   99 (9th Cir.) (where attorney admitted that delay in amending was tactical choice and

16   delay prejudiced opposing party, no abuse of discretion in denying leave to amend),

17   *cert. denied*, 479 U.S. 816 (1986).

18        *Fourth*, while a full-blown analysis of the futility of Defendants' proposed

19   amendment would require the equivalent of a Rule 12(b)(6) motion to dismiss, here

20   the Court need go no further than (1) Defendants' own highly unusual (or

21   shamelessly tactical) admissions that their claim for breach of oral contract is of

22   doubtful validity, such that they ***chose*** not to raise it in their original Counterclaims

23   or ask to raise it in their first Amended Counterclaims; (2) their admissions that they

24   do not possess a claim for promissory fraud (the elements of which are similar to

25   promissory estoppel[4]); and (3) that promissory estoppel is not a cause of action at all.

26   

27   

28   [4] It is not true, as Defendants argue, that promissory estoppel is an intent-neutral
     doctrine.  To the contrary, "the promise that promissory estoppel requires [is] one that

JMBM | Jeffer Mangels Butler & Mitchell LLP

*See Barnes*, 570 F.3d at 106 ("In most states … promissory estoppel is not a cause of action in itself; rather it is a subset of a theory of recovery based on a breach of contract and serves as a substitute for consideration.") (internal quotations and citations omitted); *accord*, *C&K Engineering Contractors v. Amber Steel Co.*, 23 Cal. 3d 1, 6 (1978) (promissory estoppel is a substitute for consideration otherwise required in a contract claim); *see also*, *McClellan*, 2015 WL 4368454, at *3 ("Where the legal basis for a cause of action is tenuous, futility supports the refusal to grant leave to amend").  Finally, Defendants' proposed claim for declaratory relief is entirely superfluous to their substantive claims.  "[W]here a plaintiff has alleged a substantive cause of action, a declaratory relief claim should not be used as a superfluous 'second cause of action for the determination of identical issues' subsumed within the first."  *Jensen v. Quality Loan Service Corp.*, 702 F. Supp. 2d 1183, 1189 (E.D. Cal. 2010) (internal citation omitted); *accord, Celador Int'l Ltd. v. Walt Disney Co.*, 347 F. Supp. 2d 846, 857-58 (C.D. Cal. 2004) (dismissing declaratory relief claims that were redundant of other causes of action).

## V.

## CONCLUSION

For all of these reasons, Defendants' Motion should be denied.

DATED: October 12, 2015

JEFFREY D. GOLDMAN
RYAN MAUCK
TALYA GOLDFINGER
JEFFER MANGELS BUTLER & MITCHELL LLP

By: /s/ Jeffrey D. Goldman
Jeffrey D. Goldman
Attorneys for Plaintiffs and Counter-Defendants

---

the promissor ***intends***, actually or constructively, to induce reliance on the part of the promisee."  *Barnes v. Yahoo!, Inc.*, 570 F.3d 1096, 1106 (9th Cir. 2009) (emphasis added).

-14-    Opposition to Motion for Leave to Amend Counterclaims

PRINTED ON
RECYCLED PAPER
LA 12312525v4