UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 14-3466-GW(JPRx) | Date | April 20, 2016 |
|---|---|---|---|
| Title | *UMG Recordings, Inc., et al. v. Global Eagle Entertainment, Inc., et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: | |
| None Present | None Present | |

**PROCEEDINGS (IN CHAMBERS):** FINAL RULING ON: (1) PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT, OR, ALTERNATIVELY, FOR AN ORDER IDENTIFYING MATERIAL FACTS NOT GENUINELY IN DISPUTE MOTION TO STRIKE [370], (2) DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT [374], AND (3) PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT AND CROSS-MOTION FOR SUMMARY JUDGMENT RE DEFENSES [398]

Attached hereto is the Court's Final Ruling as to the above-entitled motions. The Court GRANTS Plaintiffs' Motion for Summary Judgment [370], except as to their infringement claims with respect to works appearing on US Airways playlists prior to April 2014. The Court would DENY IFP's Motion and GRANT Plaintiffs' cross-motion.

:

Initials of Preparer   JG

<u>*UMG Recordings, Inc., et al. v. Global Eagle Entm't, et al.*</u>, Case No. CV-14-3466-GW (JPR) Final Ruling on: (1) Plaintiffs' Motion for Summary Judgment or Partial Summary Judgment, or, Alternatively, for an Order Identifying Material Facts Not Genuinely in Dispute, and Motion to Strike, (2) Defendants' Motion for Partial Summary Judgment, and (3) Plaintiffs' Opposition to Defendants' Motion for Partial Summary Judgment and Cross-Motion for Partial Summary Judgment

The Court adopts its March 31, 2016 Tentative Ruling ("3/31/16 Ruling"), *see* Docket No. 446, as its Final Ruling, except that it (1) supplements and amends its discussion of IFP's statute of limitations defense as follows, and (2) makes the following rulings on the parties' evidentiary objections:

## I. **IFP's Statute of Limitations Defense**

The parties have each moved for summary judgment with respect to IFP's affirmative defense of statute of limitations. *See* IFP's MSJ, Docket No. 432; Opp'n to IFP's MSJ, Docket No. 397-4. Plaintiffs' claims are subject to three-year limitations periods. *See* 17 U.S.C. § 507(b); Cal. Civ. Code § 338(a); *Bridge Publications, Inc. v. Vien*, 827 F.Supp. 629, 634 (S.D. Cal. 1993) (applying three-year statute per § 338(a) to "copyright claims based on Cal. Civ. Code § 980(a)(2)"); *Garcia v. Coleman*, 2008 WL 4166854, at *9 n.4 (N.D. Cal. Sept. 8, 2008).

"A claim ordinarily accrues 'when [a] plaintiff has a complete and present cause of action.'" *Petrella v. Metro-Goldwyn-Mayer, Inc.*, 134 S.Ct. 1962, 1969 (2014) (quoting *Bay Area Laundry & Dry Cleaning Pension Trust Fund v. Ferbar Corp. of Cal.*, 522 U.S. 192, 201 (1997) (internal quotation marks omitted)). "A copyright claim thus accrues when an infringing act occurs." *Id.* (internal quotation and alteration marks omitted). The Ninth Circuit has adopted, "as an alternative to the incident of injury rule, a 'discovery rule,' which starts the limitations period when 'the plaintiff discovers, or with due diligence should have discovered, the injury that forms the basis for the claim.'" *Petrella*, 134 S.Ct. at 1969, n.4 (quoting *William A. Graham Co. v. Haughey*, 568 F.3d 425, 433 (3d Cir. 2009) (internal quotation marks omitted) and citing 6 W. Patry, Copyright § 20:19 at 20-28 (2013) ("The overwhelming majority of courts use discovery accrual in copyright cases.")); *see also Polar Bear Prods., Inc. v. Timex Corp.*, 384 F.3d 700, 706 (9th Cir. 2004), *as amended on denial of reh'g*, No. 03-35188, 2004 WL 2376507 (9th Cir. Oct. 25, 2004) (concluding that "§ 507(b) permits damages occurring outside of the three-year window, so long as the copyright owner did not discover – and reasonably could not have discovered – the infringement before the commencement of the three-year limitation

1

period."). This is an "actual or constructive knowledge" standard. *Chicago Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 615 (7th Cir. 2014). "Actual discovery is just what it sounds like; 'constructive' discovery refers to the date on which [the plaintiff] as a reasonably diligent plaintiff should have discovered that the defendants were violating its rights." *Id.* "'Inquiry notice' is not the same as actual or constructive discovery." *Id.* Inquiry notice identifies "a time when the facts would have prompted a reasonably diligent plaintiff to begin investigating[,] [b]ut the limitations period does not begin to run until the plaintiff thereafter discovers or a reasonably diligent plaintiff would have discovered 'the facts constituting the violation.'" *Id.* (quoting *Merck & Co. v. Reynolds*, 559 U.S. 633, 634 (2010)).

IFP contends that Plaintiffs' claims are time-barred where the alleged infringement occurred prior to November 14, 2010 as to IFP Ltd. and prior to November 26, 2010 as to IFP USA and Global Eagle, three years prior to the dates on which the parties' tolling agreements took effect. *See* IFP's MSJ at 16:27-17:3, 19:19-20. IFP argues that "no trier of fact could reasonably conclude that by November 14, 2010, Plaintiffs did not know and could not have discovered facts sufficient to assert the copyright claims they are now asserting (insofar as pre-November 14, 2010 claimed infringements are concerned)." *See id.* at 18:23-26.

The evidence before the Court does not indicate that Plaintiffs had actual or constructive knowledge of IFP's infringement of their works by November 2010. To the contrary, the evidence illustrates that Isherwood's intentionally vague communications with UMG and EMI prior to November 2010 did not include accurate descriptions of IFP's business practices and did not indicate that IFP was already using Plaintiffs' works. *See* 3/31/16 Ruling at pages 12-18. As to UMPG, there is no evidence that Isherwood ever communicated with UMPG or that his attempts to secure licenses through HFA were ever relayed to UMPG.[1] And, in any event, Isherwood's communications with HFA did not include accurate descriptions of IFP's business practices and did not indicate that IFP was already using UMPG's works.

For instance, IFP contends that a string of e-mails from late January 2009 and early February 2009 between individuals at UMG and Alison Pember ("Pember") of Zune, a provider of digital media products and services, is evidence that UMG was aware of IFP's use of its works at that time. *See* Ex. 122, Docket No. 432-2 at 133-34. In those e-mails, Pember indicates that

---

[1] IFP has conceded that it "is not aware of any communications about licensing with UMG or UMPG other than those that Isherwood had with them . . . ." Docket No. 424 at ¶ 169.

Zune will be providing in-flight music programming for United Airlines starting on May 1, 2009 and is "interested in helping you celebrate Motown's anniversary with a 'Motown Anniversary" channel free of charge," provided that Zune would be granted permission to use the Motown logo and a playlist of 60 songs each month. *See id.* at 2. In an internal UMG e-mail, Scott Pappas states that Zune's "deal is directly with United, although InFlight will deliver the actual audio." *See id.* at 1. This e-mail, which discusses the logistics of a particular proposed deal with a non-party, at best indicates that UMG was aware of IFP's existence; it is irrelevant to IFP's use of UMG's works in other contexts, including those at issue in this litigation, and has no bearing on UMG's purported awareness of any such uses.

IFP also points to an October 12, 2009 e-mail from Isherwood to UMG's Tom Rowland. *See* Ex. 2, Docket No. 370-4. In that e-mail, Isherwood states that he was brought in to ensure that IFP "has musical work and sound recording licenses in place around the world that meet their current needs, because a lack of documentation left by the previous management means that the situation is rather unclear in certain areas." *Id.* at 1. Isherwood states that IFP's "principle [*sic*] office is in London where the bulk of the audio programmes are made and duplicated" and later states that "all duplication and encoding takes place in the UK." *Id.* at 1-2. Isherwood also states that IFP "has an office in Los Angeles which makes programmes for a dozen or so airlines." *Id.* Isherwood states that – as a result of IFP's relationships "with the marketing and promotional departments of all major record companies as well several independent labels in the US who have strongly encouraged Inflight to use their repertoire in the programmes made for these airlines" – the licensing "situation" "is not clear." *Id.* Isherwood states that he is contacting UMG to put the necessary licenses in place. *Id.* Even if the phrase "makes programmes" could be construed to indicate that some reproduction was taking place in the United States, nothing in this e-mail suggests that IFP was already engaged in the use of UMG's works.

IFP also highlights a September 21, 2010 e-mail from Isherwood to UMG's Bill Waddell. *See* Ex. 30, Docket No. 370-7. In this e-mail, Isherwood again states that IFP's "principle [*sic*] office is in London where the bulk of the audio programmes are made and duplicated." *Id.* at 1. Isherwood states that IFP "has an office in Los Angeles which makes programmes" for several airlines and attaches a document "that sets out what type of programmes are made in the LA

3

office."[2]  *Id.*  Isherwood states that "[o]nce the programmes are made they are duplicated . . . or encoded . . . primarily in London," and that such duplication and encoding "is covered, in respect of sound recordings, by Inflight's license with PPL in the UK."  *Id.*  He later reiterates that "the vast bulk of reproduction undertaken by Inflight globally takes place in London."  *Id.* at 2.  Isherwood states that "some encoding takes place in the US," but "mainly with respect to audio-visual programmes."  *Id.* at 1.  Finally, Isherwood states, the "copies of programmes are then distributed throughout the world to each airline."  *Id.*  Again, even if these statements could be construed to indicate that some sound recordings and musical compositions were being duplicated in the United States, or being duplicated abroad and imported into the United States, nothing in this e-mail suggests that IFP was already engaged in the use of UMG's works.

In the September 21, 2010 e-mail, Isherwood further states it is amenable to a "royalty rate for the reproduction of sound recordings for inflight entertainment" of "15% of relevant revenue, pro[-]rated for each label to the actual number of tracks used by Inflight."  *Id.* at 2.  Isherwood states that "[t]he annual revenue for programme production for the LA office is in the region of $160,000" and "[t]herefore the total payment to labels would be $24,000."  *Id.*  Accordingly, Isherwood states, "[a]s UMG's market share is somewhere in the region of 30%, Inflight would not want to pay an advance that exceed[s], for example, $7,200."  *Id.*  IFP construes these statements as admissions that IFP was already using UMG's works.  These prospective, exemplar calculations of what an agreeable advance might be, based on the Los Angeles office's approximate revenue and UMG's approximate market share, fail to put UMG on even inquiry notice of IFP's longstanding infringement of their works.

In addition, although the "actual or constructive knowledge" standard applies here, IFP argues that its "open and notorious" use of Plaintiffs' works on airlines "was itself sufficient to put Plaintiffs on inquiry notice for purposes of triggering the statute of limitations," a contention that appears to be premised on the fact that certain of UMG's executives occasionally traveled by plane and observed that in-flight entertainment existed.  *See* IFP's MSJ at 18:26-28; IFP's RPSF ¶ 2(a)(1), Docket No. 416-2.  IFP also attempts to argue that Plaintiffs "actually knew" of IFP's infringements in light of evidence involving the activities of *other* content service providers.  *See* IFP's MSJ at 19:3-9.  These arguments are unavailing.  *See* Order Denying Pls.' Mot. for Review

---

[2] The attached list of "programmes" lists the various genres of music provided to each airline, but includes no information regarding the specific tracks included or the source of those tracks.  *See* Ex. 30 at 4-5.

4

at 19, Docket No. 334 ("[P]laintiffs correctly note that the statute of limitations is not affected by knowledge they may have possessed of other infringers.").

For the foregoing reasons, the Court grants summary judgment to Plaintiffs on IFP's statute of limitations defense.

## II. **Evidentiary Objections**

*A. Plaintiffs' Evidentiary Objections to the Declaration of Iain Kemplay Submitted in Support of IFP's Motion for Partial Summary Judgment (Docket No. 374-4), Docket No. 399*

1. Overruled.
2. Sustained.
3. Overruled.
4. Sustained.
5. Sustained.
6. Sustained.
7. Overruled.
8. Sustained.
9. Overruled.
10. Sustained.
11. Overruled.
12. Overruled.
13. Overruled.
14. Overruled.
15. Overruled.
16. Overruled.
17. Overruled.
18. Overruled.
19. Overruled.
20. Overruled.
21. Overruled.
22. Overruled.
23. Sustained.
24. Overruled.
25. Overruled.
26. Overruled.
27. Overruled.
28. Overruled.
29. Overruled.
30. Overruled.
31. Overruled.
32. Overruled.
33. Sustained.
34. Overruled.
35. Sustained.
36. Sustained.
37. Sustained.

*B. IFP's Evidentiary Objections to Evidence Submitted in Support of Plaintiffs' Motion for Summary Judgment, Docket No. 400-2*

1. Overruled.
2. Overruled.
3. Overruled.
4. Overruled.
5. Overruled.
6. Overruled.
7. Overruled.
8. Overruled.
9. Overruled.
10. Overruled.
11. Overruled.
12. Overruled.
13. Overruled.
14. Overruled.
15. Overruled.
16. Overruled.
17. Overruled.
18. Overruled.
19. Overruled.
20. Overruled.
21. Overruled.

### C. IFP's Evidentiary Objections to Evidence Submitted in Opposition to IFP's Motion for Partial Summary Judgment, Docket No. 414-3

1. Overruled.
2. Sustained.
3. Sustained.
4. Overruled.
5. Overruled.
6. Overruled.
7. Overruled.
8. Sustained.
9. Overruled.
10. Overruled.
11. Overruled.
12. Overruled.
13. Overruled.
14. Overruled.
15. Overruled.
16. Overruled.
17. Overruled.
18. Overruled.
19. Overruled.
20. Overruled.
21. Overruled.
22. Overruled.
23. Overruled.

### D. Plaintiffs' Evidentiary Objections to Evidence Submitted in Opposition to Plaintiffs' Motion for Summary Judgment, Docket No. 419-5

1. Sustained.
2. Sustained.
3. Sustained.
4. Overruled.
5. Overruled.
6. Overruled.
7. Sustained.

### E. Plaintiffs' Evidentiary Objections to Evidence Submitted in Reply to IFP's Motion for Summary Judgment, Docket No. 423

1. Sustained.